UNITED STATES of America, Plaintiff–Appellee,

v.

Schubert E. MUNDT, Defendant–Appellant.

No. 93–2623.

United States Court of Appeals, Sixth Circuit.

Argued June 13, 1994.

Decided July 11, 1994.

Richard Delonis, Asst. U.S. Atty. (argued and briefed), James C. Mitchell, Asst. U.S. Atty., Detroit, MI, for plaintiff-appellee.

Richard M. Helfrick, Federal Public Defenders Office, Detroit, MI (argued and briefed), for defendant-appellant.

Schubert E. Mundt, pro se.

Before: KENNEDY and JONES, Circuit Judges; and GRAHAM, District Judge.*

KENNEDY, Circuit Judge.

Defendant Schubert E. Mundt appeals his conviction and six-month sentence for failing to file federal income tax returns for the tax years 1983 and 1984, in violation of 26 U.S.C. § 7203. Defendant argues that the three and a half year time lapse between the date of the indictment and the date of his arrest violated his Sixth Amendment right to a speedy trial. He also contends that the District Court lacked jurisdiction over him be-cause he is not the resident of any "federal zone." For the reasons that follow, we affirm.

## I.

On February 8, 1989, a grand jury handed down a two-count indictment charging defendant with tax evasion for the years 1983 and 1984. Federal officials did not arrest defendant until July 3, 1992. Upon motion of defendant, the indictment was dismissed for failure to allege an essential element of the crime. On March 30, 1993, a grand jury issued a two-count superseding indictment charging defendant with the failure to file income tax returns for the years 1983 and 1984. On June 14, 1993, the court conducted an evidentiary hearing on defendant's previously filed motion to dismiss for violation of his Sixth Amendment right to a speedy trial and denied it. After a first jury trial ended in a mistrial, a second jury found defendant guilty of both counts. The court sentenced defendant to six months on each count, to be served concurrently. Defendant timely appealed.

## II.

Defendant did not file a single valid federal income tax return with the Internal Revenue Service ("IRS") from 1966 through 1991. In 1980, defendant was convicted of tax evasion and sentenced to three consecutive one-year terms of imprisonment. On February 2, 1983, he was released on parole. Defendant violated the terms of his parole when he again failed to file a return for 1983 and was returned to jail on November 3, 1984.

In 1985, IRS special agent Joseph Boley began an investigation of defendant, which led to the present charges. On August 15, 1985, Boley located defendant at his workplace, Final Engineering and Development ("FEDCO"). Boley told defendant that he was investigating defendant's tax status for the years 1983 and 1984. At that time, Boley learned that defendant was living out of his car and sleeping at FEDCO. Boley also

---

* The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

learned of defendant's beliefs that he was not obligated to pay federal income taxes because he did not live in a federal zone, because he was a member of the underground economy working for cash as a natural person, and because he did not own any privileges or was not a member of a privileged class.

After the investigation was completed, the IRS recommended prosecution to the U.S. Department of Justice. On March 3, 1987, a letter was mailed to Mundt at the FEDCO address informing him of the recommendation. By 1987, FEDCO had gone out of business with no forwarding address and the letter, which was returned to sender, never reached defendant.

The original two-count indictment was returned in February 1989. Boley began looking for defendant in July 1989. From defendant's driver's license number and car registration, Boley obtained two addresses for defendant, one in Howell, Michigan and the other at a motel in Port Huron, Michigan. The investigation of these addresses was fruitless. A subsequent check with the Secretary of State revealed that defendant had changed his address to a second motel in Port Huron. Boley checked both motels periodically during 1990 and 1991 to no avail. Boley learned from motel managers that defendant would stay for a week or two at a time on occasion. After learning from a motel employee that defendant may have gone to Florida and knowing that defendant had once held a real estate license, Boley checked with both Florida and Michigan authorities to see if defendant had renewed his license; he had not. Boley was not alone in his problems of locating defendant; the collection division of the IRS closed down an investigation of defendant in September of 1990 because it could not find him.

In July 1991, Boley learned that defendant might be working for a business called CDI. Boley monitored CDI's premises looking unsuccessfully for defendant's car.

Aware that defendant had reached retirement age, Boley explored a hunch that defendant might be collecting social security benefits. The Social Security Administration provided two different addresses for defendant:

1) a post office box in Westland, Michigan; and 2) Mail Boxes Etc., a mail forwarding service company in Sterling Heights, Michigan. Boley's hunch proved to be correct. Defendant was receiving benefits and the checks were being directly deposited into the Research Credit Union. Boley then learned that shortly after the funds were deposited, the money would be withdrawn. The two branches of the credit union where the withdrawals were made were surveilled and on July 3, 1992, when defendant arrived to make a withdrawal, he was arrested.

## III.

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...." The Supreme Court has developed a four-part balancing test to use in determining whether a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant has asserted his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530–32, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972). The test was crafted to deal with the "vague," "amorphous," and "slippery" quality of the right, which "is necessarily relative .... [and] consistent with delays and depends upon circumstances." *Id.* at 521–22, 92 S.Ct. at 2188 (citation omitted).

■ The inquiry into the first factor of the *Barker* test is bifurcated. The first half asks whether the delay was long enough to be "presumptively prejudicial" and thus long enough to trigger the rest of the speedy trial analysis. *Id.* at 530, 92 S.Ct. at 2192. Recently, the Supreme Court noted that this threshold-type prejudice can be presumed where the post-accusation delay approaches one year. *Doggett v. United States,* —— U.S. ——, —— n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520 (1992). Here, the delay was approximately three and a half years, thus satisfying this initial burden. The second half of the inquiry requires consideration of prejudice to the defendant, which will be discussed below under factor four.

As to the second factor, defendant contends that the United States is entirely responsible for the delay. In response, the United States posits that the delay is attributable to defendant's unorthodox living habits, which included living in his car, sleeping at his workplace, living in motels for short intervals, and receiving mail through a post office box. The United States alleges that defendant lived in this way to conceal his whereabouts and avoid detection. The District Court considered the facts and apportioned the blame for the delay equally.

Whether or not defendant was intentionally evading authorities, his lifestyle made it difficult for authorities to track him down. If defendant had not been so transient and if he had lived at his mailing address instead of using post office boxes, he would have been found much earlier as the IRS used conventional search methods in a reasonably diligent manner.

As to the third factor, defendant testified that he was unaware of the indictment until the day that he was arrested. The United States asserts that defendant should not be allowed to use what it characterizes as his *deliberate* ignorance to shield him from the responsibility of asserting his right. In 1985, defendant had been informed that he was being investigated by the IRS. From this the United States invites the panel to draw the inference that defendant was actively eluding apprehension. Beyond this, however, the United States presents no other evidence that defendant had any knowledge of the indictment. Further, the evidence in the record supports defendant's contention that he did not know of the charges until he was arrested. His failure to assert the right before arrest therefore cannot be held against him. *See Doggett*, at ——, 112 S.Ct. at 2691 (defendant should not be penalized for invoking right after arrest where he did not know of indictment before arrest).

Lastly, we examine whether defendant was prejudiced by the delay. Prejudice is examined in reference to the three interests the right was designed to protect:

(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious ·is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532, 92 S.Ct. at 2193 (footnote omitted). The first two interests are not implicated here where defendant posted bond on the day he was arraigned and where defendant was unaware of the indictment until he was arrested. Defendant's claim of prejudice is based on his broad assertion that the delay impaired his defense.

In *Doggett*, the Supreme Court rejected the argument that a defendant must pinpoint how the delay prejudiced his defense with specificity. "[I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Doggett*, —— U.S. at ——–——, 112 S.Ct. at 2692–93 (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193). The Court went on to state that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay." *Id.* at ——, 112 S.Ct. at 2693 (citation omitted).

When a defendant is unable to articulate the harm caused by delay, the reason for the delay (factor 2) will be used to determine whether the defendant was presumptively prejudiced. If the government has been diligent in its pursuit of a defendant and delay was "inevitable and wholly justifiable," a speedy trial claim will generally fail. *Id.* If, on the other hand, the government has been intentionally dilatory for the purpose of impairing the defendant's defense, violation will almost surely be found. *Id.* Between these two extremes lies negligence. "While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot

demonstrate exactly how it has prejudiced him." *Id.*

While defendant contends that the United States was negligent in its prosecution of his case, we find that it was reasonably diligent in its efforts. More importantly, the United States has persuasively rebutted any presumption of prejudice by proving that the delay did not impair defendant's defense. *See Doggett,* at —— n. 4, 112 S.Ct. at 2694 n. 4. Defendant admitted in sworn testimony that he did not file tax returns in 1983 or 1984. Defendant's defense was not dependent upon exculpatory evidence that might be lost or thrown away or the testimony of witnesses whose memories might fade with time. Defendant's position was and continues to be that he is not subject to the federal tax laws. The delay did not harm defendant's ability to present his defense. We conclude, therefore, that defendant's right to a speedy trial was not violated. *Cf. United States v. DeClue,* 899 F.2d 1465 (6th Cir.1990) (tax evasion case involving facts very similar to instant case; court held six-year delay not unreasonable).

### IV.

On the merits, defendant argues that the District Court lacked jurisdiction over him because he is solely a resident of the state of Michigan and not a resident of any "federal zone" and is therefore not subject to federal income tax laws. This argument is completely without merit and patently frivolous.

To put the argument to rest, we quote the following from a Tenth Circuit opinion in which the court was responding to an identical tax-protester argument.

[Defendant]'s motion to dismiss advanced the hackneyed tax protester refrain that federal criminal jurisdiction only extends to the District of Columbia, United States territorial possessions and ceded territories. [Defendant]'s memorandum blithely ignored 18 U.S.C. § 3231 which explicitly vests federal district courts with jurisdiction over "all offenses against the laws of the United States." [Defendant] also conveniently ignored article I, section 8 of the United States Constitution which empowers Congress to create, define and punish crimes irrespective of where they are committed. *See United States v. Worrall,* 2 U.S. (2 Dall.) 384, 393, 1 L.Ed. 426 (1798) (Chase, J.). Article I, section 8 and the sixteenth amendment also empowers Congress to create and provide for the administration of an income tax; the statute under which defendant was charged and convicted, 26 U.S.C. § 7201, plainly falls within that authority. Efforts to argue that federal jurisdiction does not encompass prosecutions for federal tax evasion have been rejected as either "silly" or "frivolous" by a myriad of courts throughout the nation. In the face of this uniform authority, it defies credulity to argue that the district court lacked jurisdiction to adjudicate the government's case against defendant.

... For seventy-five years, the Supreme Court has recognized that the sixteenth amendment authorizes a direct nonapportioned tax upon United States citizens throughout the nation, not just in federal enclaves, *see Brushaber v. Union Pac. R.R.,* 240 U.S. 1, 12–19, 36 S.Ct. 236, 239–42, 60 L.Ed. 493 (1916); efforts to argue otherwise have been sanctioned as frivolous....

*United States v. Collins,* 920 F.2d 619, 629 (10th Cir.1990) (citations omitted), *cert. denied,* 500 U.S. 920, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991).

### V.

Accordingly, the judgment of the District Court is **AFFIRMED.**