*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0298p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

                             No. 09-5903

       *v.*

JOHN FERREIRA,

            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
Nos. 05-00092-003; 09-00016-001—
Curtis L. Collier, Chief District Judge.

Argued: July 22, 2011

Decided and Filed: November 30, 2011

Before: MOORE and KETHLEDGE, Circuit Judges; MARBLEY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Steven G. Moore, Fort Oglethorpe, Georgia, for Appellant. Scott A. Winne, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Steven G. Moore, Fort Oglethorpe, Georgia, for Appellant. Scott A. Winne, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

      MARBLEY, D. J., delivered the opinion of the court, in which MOORE, J., joined. KETHLEDGE, J. (pp. 12–15), delivered a separate dissenting opinion.

_____

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

---

**OPINION**

---

ALGENON L. MARBLEY, District Judge. Defendant-Appellant John Ferreira is serving a term of imprisonment of 110 months following a plea of guilty to conspiracy to distribute 500 grams or more of methamphetamine. On appeal, Ferreira argues that the district court erred in four respects: (1) by finding that Ferreira's Sixth Amendment right to a speedy trial was not violated; (2) by finding that the Speedy Trial Act did not authorize dismissal of his indictment; (3) by finding that dismissal without prejudice was the appropriate remedy for the violation of the Interstate Agreement on Detainers Act; and (4) by ordering that Ferreira's federal sentence be served consecutively to his state term of imprisonment for voluntary manslaughter. Because the district court erred by finding that Ferreira's Sixth Amendment right to a speedy trial was not violated, we reverse the district court's denial of Ferreira's speedy trial motion and remand for dismissal of the indictment with prejudice.

I.

On September 13, 2005, the Government charged Ferreira with conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). At the time of the federal indictment, Ferreira was in the custody of the state authorities in Bartow County, Georgia, on unrelated charges. On October 5, 2005, the Government filed a petition for a writ of habeas corpus *ad prosequendum* directing the Bartow County Sheriff's Department to bring Ferreira to the Eastern District of Tennessee for an initial appearance scheduled for October 19, 2005. A second Superceding Indictment was filed on October 12, 2005, and the Government filed a second petition for a writ of habeas corpus *ad prosequendum* on October 21, 2005. On that date, the district court entered an Order granting a writ of habeas corpus *ad prosequendum* for Ferreira.

Although Ferreira had initially been in the Bartow County, Georgia Jail, at some point he was transferred to the Cobb County, Georgia Jail, to answer unrelated charges in that jurisdiction. The United States Marshals Service notified the Government of Ferreira's transfer to Cobb County before the Government filed the second petition for a writ on October 21, 2005. The Government misplaced the notification and directed the second petition for a writ to Bartow County. The United States Marshals lodged federal detainers with Georgia authorities in December of 2006 and February of 2007. On September 6, 2007, Ferreira filed a *pro se* motion requesting appointment of counsel and included a copy of his executed detainer and a request for a speedy trial. On July 8, 2008, Ferreira filed a *pro se* motion to dismiss the indictment for speedy trial violations.

On July 17, 2008, the Government requested a third writ of habeas corpus *ad prosequendum*. The district court issued the writ on July 21, 2008, directing it to the Mason State Prison in Georgia where Ferreira was serving his state sentence. On August 25, 2008, Ferreira appeared in the United States District Court for the Eastern District of Tennessee, at Chattanooga, for an initial appearance and arraignment. Ferreira was appointed counsel, who filed a Motion to Dismiss the Indictment with prejudice, alleging violations of the Sixth Amendment right to a speedy trial, the Speedy Trial Act, the Interstate Agreement on Detainers Act ("IADA"), and Rule 48(b) of the Federal Rules of Criminal Procedure. The Government responded by conceding that it violated the IADA but arguing that the indictment should be dismissed without prejudice.

On February 6, 2009, the district court denied Ferreira's motion with respect to the Sixth Amendment, Speedy Trial Act, and Rule 48(b) claims. It granted Ferreira's motion to dismiss the case for a violation of the IADA, but did not dismiss the case with prejudice because Ferreira failed to show how the delay actually harmed him. On February 10, 2009, the Government filed a new one-count indictment charging Ferreira with conspiracy to distribute 500 grams or more of methamphetamine, alleging the same facts as in the indictment in the prior case. Ferreira subsequently pleaded guilty pursuant to a conditional plea agreement, reserving the right to appeal the issues raised in the prior case.

At sentencing, the district court adopted the conclusions in the Presentence Investigation Report that Ferreira's Guidelines range was 151 to 188 months of imprisonment with a ten-year mandatory minimum. The court then granted the Government's motion for a downward departure, *see* 18 U.S.C. § 5K1.1, reducing the Guidelines range to 108 to 135 months. Ferreira urged the district court to run the federal sentence concurrently with Ferreira's undischarged state sentence. The Government argued that the sentence should be served consecutively to the state sentence because a concurrent sentence would be akin to imposing no punishment for the federal offense committed by Defendant. The district court imposed a sentence of 110 months consecutive to the state undischarged term of imprisonment, and this appeal followed.

## II.

We have jurisdiction over Ferreira's appeal of his convictions pursuant to 28 U.S.C. § 1291 because the district court entered a final judgment, and Ferreira timely filed a notice of appeal. This Court has jurisdiction to review the district court's sentencing determination pursuant to 18 U.S.C. § 3742(a) as a result of the final judgment entered by the district court and Ferreira's timely filing of a notice of appeal pursuant to 28 U.S.C. § 1291.

## III.

As we have noted, "[i]n determining whether a defendant's right to a speedy trial has been violated, this court reviews questions of law *de novo* and questions of fact under the clearly erroneous standard." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006).

Criminal defendants possess a Sixth Amendment right to a speedy trial. U.S. Const. amend. VI. Courts must balance four factors to determine whether a delay violated the Sixth Amendment: (1) the "[l]ength of the delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and (4) "prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "No one factor is determinative; rather, they

are related factors which must be considered together with such other circumstances as may be relevant." *Robinson*, 455 F.3d at 607.

A.

The length of the delay "is a threshold requirement, and if the delay is not uncommonly long, judicial examination ceases." *Id.*; *see also Barker*, 407 U.S. at 530 ("The length of the delay is to some extent a triggering mechanism."). The delay must "cross[] the threshold dividing ordinary from 'presumptively prejudicial' delay." *Girts v. Yanai*, 600 F.3d 576, 588 (6th Cir. 2010) (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). If it does not, then "judicial examination ceases." *Robinson*, 455 F.3d at 607. A delay of one year or more crosses the threshold and triggers analysis of the remaining *Barker* factors. *Id.*

The district court found that the delay in this case was "nearly three years" long—from September 13, 2005 until August 25, 2008, or thirty-five months—a length that satisfies the threshold requirement. We therefore continue our analysis of the remaining three *Barker* factors.

B.

Courts assign "different weights . . . to different reasons" for the government's delay. *Barker*, 407 U.S. at 531. "Governmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral reasons such as negligence are weighted less heavily, and valid reasons for a delay weigh in favor of the government." *Robinson*, 455 F.3d at 607.

As the district court found, the Government was solely responsible for causing the delay, which the district court rightly characterized as "beyond simple negligence." Neither party offers a reason for finding either that the Government was less or more than grossly negligent, as the district court found, and we conclude that this factor weighs in Ferreira's favor.

C.

As both parties agree, Ferreira properly and repeatedly asserted his right to a speedy trial. This factor, therefore, weighs in Ferreira's favor.

D.

The final factor requires a defendant to "show that 'substantial prejudice' has resulted from the delay." *United States v. Schreane*, 331 F.3d 548, 557 (6th Cir. 2003) (quoting *United States v. White*, 985 F.2d 271, 276 (6th Cir. 1993)). Prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect," of which there are three: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. The possibility that the defense will be impaired is "the most serious" of these interests. *Id.*

Because Ferreira was incarcerated in state prison during the delay at issue, he claims only the third type of prejudice. He argues on appeal, as he did in the district court, that the passage of time generally impaired his defense by causing the evidence to go stale. The Sixth Circuit has recognized that "extreme" delays may, on their own, "give rise to a strong presumption of evidentiary prejudice affecting the fourth *Barker* factor." *United States v. Smith*, 94 F.3d 204, 209 (6th Cir. 1996) (quotation omitted); *see also Doggett*, 505 U.S. at 655 ("[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."). "When a defendant is unable to articulate the harm caused by delay, the reason for the delay (factor 2) will be used to determine whether the defendant was presumptively prejudiced." *United States v. Mundt*, 29 F.3d 233, 236 (6th Cir. 1994). Where the delay has been caused by negligence, "our toleration of such negligence varies inversely with its protractedness." *Doggett*, 505 U.S. at 657.

The Sixth Circuit has not previously ruled in a published disposition upon whether a three-year pre-trial delay due to the government's negligence generates a

presumption of prejudice under the fourth *Barker* prong.[1] Rather, three years falls between delays that we have found nonprejudicial, *see United States v. Jackson*, 473 F.3d 660, 667 (6th Cir. 2007) (holding a nearly two-year delay between a defendant's indictment and his arrest, attributable to the government's negligence, did not satisfy the actual prejudice prong), and those that we have found prejudicial, *see United States v. Brown*, 169 F.3d 344, 351 (6th Cir. 1999) (holding an over five-year delay attributable to the government's negligence to be prejudicial). *Cf. Doggett*, 505 U.S. at 657 (holding six-year delay attributable to government's negligence to be "clearly sufficient" for finding prejudice warranting dismissal).

In an unpublished opinion reversing a denial of a petition for habeas corpus, however, we held that a petitioner whose trial was delayed by three and a half years had shown a violation of his right to a speedy trial. *Dixon v. White*, 210 F. App'x 498, 499 (6th Cir. 2007). The petitioner in that case was arrested and charged on January 16, 1994. He filed a demand for a speedy trial seven months later, moved to dismiss the information five months after that, renewed the motion in another eight months, renewed it again in seven more months, and renewed it one final time on the day his trial began, June 20, 1997. *Id*. The Michigan Court of Appeals applied *Barker* and concluded that there was no speedy trial violation because the petitioner had not shown prejudice from the delay. *Id*. at 501. We concluded otherwise, holding that the Michigan court unreasonably applied *Doggett*, a "materially indistinguishable" case. *Id.* at 501–02. Both cases involved an "uncommonly long" delay attributable to the government, a defendant who raised his right to a speedy trial, and no showing of actual prejudice. *Id*. at 502. Notably, only approximately thirty-three of the forty-one months of the delay could be attributed to the government, *id.* at 502 n.5, placing Ferreira's thirty-five month delay beyond a period that we have previously concluded violated the Sixth Amendment. *Cf. Sykes v. Stephens*, 652 F.2d 59, 59 (6th Cir. 1981) (unpublished) ("[A] three year delay is suspicious . . . .").

---

[1]In *Smith*, we held that a three-year delay in a defendant's appeal was "negligible at best." 94 F.3d at 212. *Smith* is distinguishable because the interests on appeal are distinct from those prior to trial, the delay was justified, and the government rebutted the presumption of prejudice. *See id.*

*Dixon's* holding that a three-and-a-half-year delay necessitates a finding of presumptive prejudice is in keeping with decisions from two of our sister circuits. In *United States v. Erenas-Luna*, the Eighth Circuit applied *Doggett* and concluded that a three-year delay between indictment and arraignment caused by "the serious negligence of the government" was excessive enough to trigger a presumption of prejudice. 560 F.3d 772, 780 (8th Cir. 2009). Likewise, in *United States v. Ingram*, the Eleventh Circuit held that a two-year, post-indictment delay caused by egregious government negligence allowed the court to presume prejudice in the fourth *Barker* prong. 446 F.3d 1332, 1339 (11th Cir. 2006).

*Dixon*, *Erenas-Luna*, *Ingram*, and the policy behind the speedy trial right support a conclusion that both the negligence that the district court found the Government committed and the significant length of the delay warrant dismissal of the indictment with prejudice. As stated in *Barker*, the effect delay has on a defendant's ability to mount a defense is "the most serious" of the interests protected by the right, as "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." 407 U.S. at 532. The Supreme Court subsequently elaborated as follows:

> Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

*Doggett*, 505 U.S. at 657. In light of the Supreme Court's admonition not to condone "prolonged and unjustifiable delays," *id.*, we can only conclude that the district court erred by not presuming prejudice in the fourth *Barker* prong.

The dissent, unable to point to any precedent we have neglected to follow, criticizes the *Barker* four-factor balancing test announced by the Supreme Court nearly four decades ago, characterizing it as "an enigma." Yet absent from the dissent's analysis is any suggested alternative. This is not surprising, as Justice Powell, writing for the

Court in *Barker*, rejected alternative, more rigid approaches prior to adopting the balancing test, despite those methods having "the virtue of clarifying when the right is infringed and of simplifying courts' application of it." 407 U.S. at 523.

Justice Powell first rejected the suggestion that a criminal defendant be offered a trial within a finite period of time, reasoning that there is "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Id.*; *accord The Supreme Court, 1971 Term: II. Constitutional Law: H. Right to a Speedy Trial: Definition of the Right*, 86 Harv. L. Rev. 164, 168 (1972) ("[I]t would indeed be an onerous undertaking for the Court to formulate fixed time-limit rules which would satisfactorily take into account the varying difficulties of preparing prosecution for different crimes, as well as the varying administrative burdens on prosecutors in different jurisdictions."). Justice Powell also declined to adopt a demand-waiver doctrine, which provides that a defendant waives consideration of his right to a speedy trial for any period in which he has not demanded a trial. *Barker*, 407 U.S. at 525. "Such an approach, by presuming waiver of a fundamental right from inaction, is inconsistent with this Court's pronouncement on waiver of constitutional rights." *Id.* The balancing test was necessary to weigh both the conduct of the prosecution and the defendant. *Id.* at 530. Although the balancing process would be "difficult and sensitive," it was nevertheless essential because the courts were dealing with "a fundamental right of the accused." *Id.* at 533.

The dissent also criticizes *Doggett*'s presumption of prejudice. Arguing that "the analysis in the lower courts . . . has devolved into a numbers game," the dissent suggests that before we apply the presumption, "we should at least ask whether there is a reason to believe that the defendant has suffered significant, albeit unidentifiable, prejudice as a result of the government's delay in bringing him to trial." But the dissent offers no recommendation as to how we should determine if there is "reason to believe" a defendant suffered significant prejudice. And how could we make such a determination if the prejudice is often unidentifiable, as the dissent concedes? Such an approach would undermine the reasoning articulated in *Doggett* for creating a presumption in the first

place. The government's negligence cannot be tolerated "simply because the accused cannot demonstrate exactly how it has prejudiced him." *Doggett*, 505 U.S. at 657; *see Barker*, 407 U.S. at 532 (explaining that a witness's "[l]oss of memory . . . is not always reflected in the record because what has been forgotten can rarely be shown").

IV.

In sum, all four factors weigh in favor of finding that the Government violated Ferreira's Sixth Amendment right to a speedy trial. The length of the delay is sufficient to cross the first, threshold question; the delay was caused by the Government's gross negligence; Ferreira clearly asserted his right to a speedy trial on numerous occasions; and the length of the delay is, in light of the Government's negligence, sufficient to create a presumption of prejudice.

In so holding, we do not impose a bright-line rule that every three-year delay will constitute a violation of a defendant's right to speedy trial—or will generate a presumption of prejudice. As the Supreme Court has said, "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Barker*, 407 U.S. at 522; *accord Erenas*, 560 F.3d at 779 ("[W]e have not held that a bright line exists for presuming prejudice for speedy-trial claims, and we refuse to do so here."). Rather, we presume the prejudice because we give greater weight to those delays for which the government is at fault, *see Mundt*, 29 F.3d at 236, and we conclude that the right has been violated only by considering the four factors in conjunction with one another.

Where a defendant's right to a speedy trial has been violated, "dismissal of the indictment is the only available option even when it allows a defendant who may be guilty of a serious crime to go free." *Brown*, 169 F.3d at 348; *accord Jackson*, 473 F.3d at 664 ("The remedy for a Sixth Amendment speedy trial violation is dismissal with

prejudice."). Accordingly, we REVERSE the district court's denial of Ferreira's motion and REMAND for an entrance of a dismissal of the indictment with prejudice.[2]

---

[2]Because our conclusion on the speedy trial claim is dispositive, we do not reach Ferreira's remaining three contentions of error.

---

**DISSENT**

---

KETHLEDGE, Circuit Judge, dissenting.  The law's clarity with respect to the issue we decide today is not nearly commensurate with its stakes.  The stakes are that, if the government violates a defendant's constitutional right to a speedy trial, he goes free, forever unpunished even for serious felonies that he openly admits he committed.  Such is the case here:  John Ferreira was caught red-handed with nearly 900 grams of methamphetamine (which, like crack, is an enormously destructive drug), and admitted in open court that he conspired to sell more than 500 grams of it.  And yet he will serve not a single day of the 110-month sentence that the district court thought he should serve—because, in our court's view, the government took too long to bring him to trial.

Society surely pays a price for decisions like this one.  But the law that we apply in making them is an enigma.  We apply a four-factor balancing test, three factors of which are of uncertain significance.   The one factor that certainly does matter—prejudice—is in turn divided into three subfactors, two of which are overshadowed by the third, which is whether the government's delay in bringing a defendant to trial actually prejudiced his ability to defend himself there.  Such is the law as handed down to us by *Barker v. Wingo*, 407 U.S. 514 (1972).

Actual prejudice is often easy enough to measure, so if the law had been left there the courts could have muddled through their application of this test.  But the law has not been left there.  In *Doggett v. United States*, 505 U.S. 647 (1992), the Supreme Court overlaid all these factors and subfactors with something it called a "presumption of prejudice[.]"  *Id*. at 658.  Once this presumption applies (or to the extent it does; I do not know which characterization is more accurate), the government bears the burden of proving the *absence* of actual prejudice, rather than the defendant bearing the burden of proving its existence.  And at that point the defendant typically has one foot out the courthouse door, given the government's difficulty in proving a negative.

The question of when this presumption shall apply, then, is consequential for both the defendant and society alike. And that is a question, I respectfully submit, on which *Doggett* provides little guidance. We are told that "such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows." *Id.* at 657. I confess I do not know what this passage means. Only marginally more helpful is the statement that "our toleration of such negligence varies inversely with its protractedness[.]" *Id.* Neither of these statements, and nothing else in *Doggett*, provides the lower courts with much guidance as to when the presumption of prejudice should apply.

But one thing about *Doggett* is clear: the Court chose to apply the presumption there when the government's delay in bringing the defendant to trial was more than six years. And thus the analysis in the lower courts—at least in the usual case where the government's delay is the result of negligence, rather than bad faith—has devolved into a numbers game. In the Ninth Circuit, five years is enough to trigger the presumption. *See United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992). In the Fifth Circuit too, five years is enough, *see United States v. Bergfeld*, 280 F.3d 486, 491 (5th Cir. 2002), but "three years and nine months, considerably less than the delay in the cases cited above[,]" is not. *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003). In the Eighth Circuit, however, three years *is* enough, *see United States v. Erenas-Luna*, 560 F.3d 772, 780 (8th Cir. 2009); and in the Eleventh Circuit it seems that two years will do. *See United States v. Ingram*, 446 F.3d 1332, 1339-40 (11th Cir. 2006). Our court has previously said that five years is enough to trigger the presumption, *see United States v. Brown*, 169 F.3d 344, 351 (6th Cir. 1999), but that "a twenty-month delay" is not. *United States v. Jackson*, 473 F.3d 660, 668 (6th Cir. 2007). The majority's decision today likely puts us in the three-year camp.

This whole line of analysis strikes me as arbitrary. That is not surprising: *Doggett* gives the lower courts little more than a number to work with; and so the analysis in most cases that apply *Doggett* is, at bottom, simply a conclusion—that one number is enough and another is not. This is a deeply unsatisfying way of deciding

issues as important as this one.  A better way of deciding these cases would be to look beyond the numbers, to the reason why *Doggett* announced a presumption of prejudice in the first place.  As I understand it, that reason is that the particulars of actual prejudice can be increasingly hard to prove over time.  *See Doggett*, 505 U.S. at 655 ("time's erosion of exculpatory evidence and testimony can rarely be shown") (internal quotation marks omitted).  But it is one thing waive proof of particulars; it is quite another to waive the need to show any indication of prejudice at all.  And thus, before applying the presumption, we should at least ask whether there is reason to believe that the defendant has suffered significant, albeit unidentifiable, prejudice as a result of the government's delay in bringing him to trial.  Only if we are confident that the answer to that question is yes—that there is, in fact, significant prejudice in there somewhere—should we take the drastic step of ordering the defendant set free.  Perhaps this is what the Court meant when it said that "negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Id.* at 657.  But if so, the point has been lost on the lower courts.

This case strikes me as precisely the kind in which the presumption should not apply.  Because here it is transparently a fiction.  Ferreira was already incarcerated in the Georgia state prison on an unrelated charge (homicide) during the entire 35 months he waited for trial in federal court, so he did not suffer the anxiety and "oppressive pretrial incarceration" that other federal defendants do.  *Barker*, 407 U.S. at 532.  In federal court he was charged with only a single count of conspiracy to distribute more than 500 grams of methamphetamine.  He has not even attempted to offer any proof of actual prejudice as to his defense against that charge, other than the vaguest speculation that some unnamed witnesses might have become unavailable or forgetful.  The record largely refutes that speculation, since Ferreira's codefendants—and, the government says, co-conspirators—are in federal prison, and thus sober and available to testify.  And it is hard to imagine what Ferreira's defense to the charge against him would be, given the undisputed fact that he possessed 898 grams of methamphetamine when arrested—an amount vastly larger than he could consume himself, and almost twice the amount he was charged with conspiring to distribute—in addition to various meth-cook

paraphenalia.  Suffice it to say that there is not a whiff of actual prejudice in this case.  The extraordinary remedy of dismissing a criminal indictment with prejudice should be reserved for cases more extraordinary than this one.

There are few doctrines in criminal procedure as potent as *Doggett*'s presumption of prejudice.  So far as I can tell, in most cases where it has applied, the defendant has gone free.  We need more guidance than we now have in applying it.  What the lower courts need, I respectfully submit, is a rule of law—so that, before we set a guilty man free on account of prejudice, we first determine whether there actually is some.

I respectfully dissent.