UNITED STATES of America, Plaintiff,

v.

Dawn Marie ADAMS, Defendant.

### Case No. 12-20028

United States District Court, E.D. Michigan, Southern Division.

Signed July 11, 2016

Michael R. Mueller, U.S. Attorney's Office, Detroit, MI, for Plaintiff.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT [18]

Arthur J. Tarnow, Senior United States District Judge

Defendant was indicted on twelve counts of false claims for refund and twelve counts of aiding and assisting in the preparation of false income tax returns on January 17, 2012 [1]. On March 18, 2012, Defendant's indictment was unsealed [3] and an arrest warrant was issued as to Defendant [4]. Defendant was arraigned on these

charges on November 24, 2015 [8]. Defendant filed a Motion to Dismiss Indictment for Violation of Sixth Amendment Speedy Trial Right on February 11, 2016 [18]. The Government responded on March 3, 2016 [19]. An evidentiary hearing was held on this Motion on June 17, 2016. Per the Court's order on the record at the hearing, the Government and Defendant filed supplemental briefs on the pending Motion to Dismiss on June 24, 2016 [21; 22]. For the reasons stated below, Defendant's Motion to Dismiss Indictment [18] is **GRANTED with prejudice.**

FACTUAL BACKGROUND

On January 17, 2012, Defendant was charged in a twenty-four-count indictment with violations relating to the filing of false income tax returns in the year 2007. [19-1 at 69]. On the same day, an arrest warrant for Defendant was issued and both the indictment and arrest warrant were placed under seal by Court order until April 18, 2012 when it was unsealed. *Id.* On May 31, 2013, the arrest warrant was entered into the National Crime Information Center database, which would notify other law enforcement personnel outside of the Internal Revenue Service Criminal Investigation (IRS CI) of Defendant's outstanding warrant. [19-1 at 74].

From 2012-2015, Agent Southworth conducted surveillance and drive-bys of Adams' last known residence, 19256 Hawthorne Street, Highland Park, Michigan, where her grandparents lived. On or about January 31, 2012, Agent Southworth became aware of a secondary residence, located down the street from Defendant's last known residence at 19184 Hawthorne Street, where Defendant was observed exiting the house and entering a vehicle. [19-1 at 69].

Agent Southworth conducted 81.5 hours of surveillance over 23 separate dates of the two residences on Hawthorne in Highland Park, Michigan and six drive-bys of the area during 2012. [19-1 at 70-71]. The longest consecutive surveillance of the area lasted for 8.5 hours on February 13, 2012. *Id.*

Agent Southworth spoke with Defendant's grandfather at 19256 Hawthorne Street on April 13, 2012, and was informed that she was not home. [19-1 at 71-72]. Agent Southworth informed Defendant's grandfather that there was an arrest warrant out for Defendant, and that she would need to get into contact with Agent Southworth. Agent Southworth left a card with instructions on how to reach her with Defendant's grandfather, but Defendant never contacted the Agent. *Id.* At the evidentiary hearing, Special Agent Southworth testified that she did not mail any notice of Defendant's arrest warrant to either address and did not leave a copy of the warrant with Defendant's grandfather. Agent Southworth left a card five times at 19256 Hawthorne Street, but did not speak with the grandfather again after their first meeting. [19-1 at 71-73]. Agent Southworth did not knock on the door of the secondary residence or leave a card there in 2012. *Id.*

In 2013, Agent Southworth conducted eighteen days of surveillance over a total of 92 hours and performed eleven drive-bys. [19-1 at 77]. The longest period of continuous surveillance was nine hours on October 15, 2013. *Id.* On or about January 25, 2013, the government obtained a ninety day court order allowing them to have a pole camera installed across the street from 19256 Hawthorne Street to see if they could observe Defendant entering or leaving the house. [19-1 at 74]. On or about March 6, 2013 a camera was installed on a telephone pole located across from 19256 Hawthorne Street. *Id.* The camera was in use for approximately 50 days. *Id.* Agent Southworth testified at the evidentiary hearing that she did not watch all of the footage, and the footage that was watched

was in fast forward mode. Agent Southworth did not conclusively identify Defendant in any of the pole camera footage that she watched. [19-1 at 74]. At the evidentiary hearing, Defendant and her brother testified to three incidences in the footage that showed Defendant walking around outside of her grandfather's residence on three separate occasions. Agent Southworth testified that she could not positively identify Defendant from the footage, and also stated that Defendant's actions were not indicative of a person trying to hide or evade detection.

On or about March 22, 2103, Agent Southworth obtained information that Defendant had received food stamp and cash assistance benefits at 19184 Hawthorne Street in September 2011. [19-1 at 75-76]. From approximately September 26, 2013 through October 25, 2013, Agent Southworth received results from a mail cover that revealed that Defendant received mail at both 19256 Hawthorne Street and at 19184 Hawthorne Street. [19-1 at 76].

In September 2013, Agent Southworth investigated all of the cars parked on the side of Defendant's primary and secondary residences. [19-1 at 74-75]. Agent Southworth discovered that a charcoal-colored Buick Regal was registered to Defendant outside of 19256 Hawthorne Street. *Id.* Following the issuance of a summons for records relating to the lien on the vehicle, Agent Southworth learned that the address listed on the loan application that Defendant had completed was 19256 Hawthorne Street. *Id.* This address was also listed on her tax returns. [19-1 at 73]. Agent Southworth also learned that Defendant had listed Valeo Manufacturing in Hamtramck, Michigan as her employer. Agent Southworth performed a drive-by of Valeo Manufacturing, but did not observe

Defendant's car. [19-1 at 75]. At the evidentiary hearing, Agent Southworth testified that she did not enter Defendant's workplace to make any inquiries of the business concerning Defendant.

In 2014, Agent Southworth performed a total of eighteen days of surveillance for 142 hours, and conducted four drive-bys at Defendant's primary and secondary residences. [19-1 at 78-79]. Agent Southworth could not identify Defendant during her surveillance. [19-1 at 78].

In 2015, Agent Southworth performed surveillance on Defendant's two residences over twenty-three days for a total of 160.5 hours. [19-1 at 78-79]. Agent Southworth did not identify Defendant entering or exiting either residence during this time. *Id.* Agent Southworth observed the Buick Regal registered to Defendant parked in front of the secondary residence, 19184 Hawthorne Street. [19-1 at 80-81]. Following that observation, Agent Southworth checked the Wayne County property records on November 19, 2015, and contacted the owner, who informed her that Defendant was residing in his property, and that the Defendant was in the process of being evicted. *Id.*[1] On November 23, 2015, Agent Southworth and other IRS CI attempted to arrest Defendant, but she was not at the secondary residence. *Id.* The agents spoke with her adult son who called Defendant in the presence of officers. Defendant's son handed an agent the phone and the agent informed Defendant that she had an outstanding arrest warrant, and requested that she turn herself into the authorities or be arrested at a later date. *Id.* On November 24, 2015 Defendant self-reported to the United States Marshall Service at the Detroit federal courthouse for arrest relating to her 2012 indictment. *Id.* From the time

1.  At the evidentiary hearing, property owner of the secondary residence Joyce McLennan testified that Defendant had lived at the 19184 Hawthorne Street address as a tenant from approximately February 2007–December 2015.

of indictment to the arrest of Defendant, there was a delay of over 46 months, or nearly four years.

## ANALYSIS

When analyzing whether a Defendant's constitutional right to a speedy trial has been violated, the Supreme Court has looked to four factors and balanced them to determine the merits of a speedy trial claim: (1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the Defendant asserted his right to speedy trial; and (4) whether prejudice resulted to the Defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Government concedes that the delay, being longer than a year, requires that the other three factors be examined. *Doggett v. United States*, 505 U.S. 647, 652, n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

Per *Barker*, there are three different reasons for a delay in prosecution, (1) bad faith; (2) negligence; and (3) a valid reason, such as a missing witness, that results in delay despite diligent prosecution. *Barker* at 407 U.S. at 531, 92 S.Ct. 2182. In this case, the Government contends that they made "diligent, good faith efforts to find Defendant." [19 at 55]. However, the evidence on record does not support this assertion.

■ Agent Southworth, per her declaration, had knowledge of the Defendant's secondary residence, and even saw her exit that address as early in the investigation as January 31, 2012, a mere fourteen days after the indictment was issued. However, Agent Southworth did not leave her card at that residence, nor did she knock on the door of the residence until November 23, 2015. Indeed, the first attempt to inform Defendant at that address of the existing arrest warrant led to direct contact and, in turn, her voluntary self-report to the United States Marshalls the next day. Moreover, in September of 2013,

Agent Southworth received information identifying Defendant's employer, yet the only action taken was a drive-by to check for Defendant's car. Agent Southworth did not enter the business to inquire about Defendant, nor did she return to Defendant's place of business for further surveillance. Considering the lack of meaningful investigation of the various leads that the Government possessed early in the investigation, the Court finds that the reason for the delay in arrest was negligence, solely on the part of the Government.

There has been no evidence presented that Defendant attempted to evade the IRS agents, or ignored any clear announcement that she had an outstanding arrest warrant and had been indicted. It was solely the Government's inability to proceed beyond the bare minimum in investigation that resulted in the delay. For example, the agents did not walk eight houses down the street, and knock on the door of a known residence of Defendant for almost four years. This directly led to the delay. Further, the agents did not mail a copy of a notice of arrest to Defendant at either of her known residences, and did not enter her known place of work. Any of these attempts could have avoided the lengthy delay in arrest in this case.

■ The Government contends that the Defendant has not asserted a timely claim of violation of her right to a speedy trial because it is "probable that Ms. Adams was aware by April 2012 through her grandfather of the outstanding arrest warrant and that Agent Southworth was looking for her, but avoided making contact with Agent Southworth." [19 at 56]. However, as the Government concedes, there is no evidence that establishes this to a high degree of certainty, so the Court will look at the evidence as a whole to determine this factor.

At the evidentiary hearing, Defendant's brother testified that, at the time of his brief conversation with Agent Southworth, Defendant's grandfather suffered from dementia that "would come and go." At the evidentiary hearing, Defendant testified that she did not hear about her pending arrest warrant and indictment until November 2015. Additionally, the footage from the pole camera shows the image of a woman, whom Defendant and Defendant's brother identified as being the Defendant, loitering outside her grandfather's house, conversing with several people, and exiting off screen on foot. As Agent Southworth admits, these activities are not the actions of someone who is trying to hide or evade detection. Per Agent Southworth's declaration, prior to her self-reporting in November 2015, Defendant's only knowledge of the investigation was an interview that Agent Southworth conducted with her in 2008. Considering the long delay between this interview and Defendant's initial knowledge of the arrest warrant in 2015, there is no reason to infer that Defendant was aware of the charges against her from an investigation that occurred four years from the date of indictment and seven years from the date that Defendant first became aware of the arrest warrant.

Importantly, once the Defendant learned of her indictment and outstanding arrest warrant, she voluntarily turned herself into the United States Marshalls Office for arraignment the next day. This is not the action of someone who had previously been evading arrest for nearly four years. Considering these facts and testimony, the Court finds that there has been no evidence presented to suggest that Defendant was aware of the charges against her, and thus this factor does not weigh against her.

■■■ With respect to the last factor, a showing of prejudice, in cases where the Government made good faith, diligent efforts to find the Defendant and avoid de-

lay, the Defendant must "demonstrate how his defense was prejudiced *with specificity*" in order to make out a speedy trial claim no matter how long the delay. *United States v. Young*, 657 F.3d 408, 418 (6th Cir.2011) (citations omitted). If the Court determines that the reason for a lengthy delay in post-indictment arrest amounts to negligence on the part of the Government, the Supreme Court has held that prejudice can be presumed because the negligence represents a threat to the fairness of the accused's trial and both "penalize[s] many defendants for the state's fault and simply encourage[s] the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority." *Doggett v. United States*, 505 U.S. 647, 656–657, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (finding a presumption of prejudice with six-year delay). Long delays can presumptively compromise the reliability of the trial for both parties in ways that neither side can prove or even identify, since as the delay between indictment and trial increases, the chances of evidence disappearing and the memories of witnesses not being fresh and accessible forever increases as well. *Id.* This type of prejudice is unprovable and unidentifiable by its very nature, and therefore prejudice is more likely to be presumed as the delay increases. *Id.*

The Sixth Circuit has presumed delays in cases of Government negligence in numerous cases. *See e.g. United States v. Graham*, 128 F.3d 372, 376 (6th Cir.1997) (presumption with eight-year delay), *United States v. Brown*, 169 F.3d 344, 351 (6th Cir.1999) (presumption with five-and-one-half-year delay), *Dixon v. White*, 210 Fed. Appx. 498, 499 (6th Cir.2007) (presumption with 33-month delay), *United States v. Ferreira*, 665 F.3d 701, 705 (6th Cir.2011) (presumption with 35-month delay); *but see United States v. Schreane*, 331 F.3d 548, 549 (6th Cir.2003) (no presumption with

thirteen-and-one-half-month delay), *Darnell v. Berry*, 182 F.3d 916, 1999 WL 503512, at *2 (6th Cir. July 8, 1999) (no presumption with eighteen-month delay).

█ In this case, the negligent acts and omissions of the Government in securing the arrest Defendant led to a nearly four-year delay of 46 months. The Sixth Circuit has found presumptive prejudice in both *Ferreira* and *Dixon*, both of which had shorter delays, respectively 35 months and 33 months. *Supra*. While the Government attempts to factually distinguish these cases, the proposition that they rely upon, namely the holding of *Doggett*, actually supports a finding of presumed prejudice in this case as well. Therefore, the Court finds that the delay of 46 months from post-indictment to arrest and arraignment to be excessively prolonged to trigger presumptive prejudice.

█ Additionally, the Court recognizes that the pre-indictment delay between Defendant's alleged criminal conduct of filing false claims for tax refunds in January-February 2007 and indictment in January 2012 was also long. Pre-indictment delays are generally irrelevant to a post-indictment delay, and present separate issues from post-indictment delay because the former is governed by the Fifth Amendment and requires actual prejudice, while the latter is governed by the Sixth Amendment. Under *Doggett*, prejudice can be presumed given Government negligence that caused inordinately long delay. *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir.2009) (citations omitted). Therefore, when determining if the post-indictment delay is lengthy enough to trigger the speedy trial clause of the Sixth Amendment, any pre-indictment delay is irrelevant. *See United States v. Lovasco*, 431 U.S. 783, 788–89, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). However, once the speedy trial analysis is triggered, the 11th Circuit has found it relevant to consider any inordinate pre-indictment delay when determining how heavily the post-indictment delay will weigh against the Government. *See United States v. Ingram*, 446 F.3d 1332, 1338–39 (11th Cir.2006) (stating that a post-indictment delay of approximately two years weighed more against the Government given the pre-indictment delay of approximately two and a half years and necessitated a finding of presumed prejudice).

While the Court does not rely on the pre-indictment delay in its finding of presumed prejudice, it notes that the long delay of indictment, a mere day before the statute of limitations was to run on the twelve counts of 18 U.S.C. § 287 violation, supports the finding of presumed prejudice given the approximately eight year delay from the time of the alleged criminal conduct and Defendant's arraignment. This excessive delay would further contribute to prejudice against both parties that cannot be anticipated or known because of the passage of time.

The Court has found presumptive prejudice arising from the 46-month delay between indictment and arrest of Defendant. The Government's early investigation could have taken the small and simple steps required to contact Defendant. There were multiple opportunities over the course of the four-year period that could have alerted Defendant to her indictment. Defendant was not aware of her indictment and pending arrest warrant until November 2015. Defendant self-reported to the United States Marshalls the very next day after she became aware of this information. Once a year passed from the date of indictment, and the Sixth Amendment speedy trial clause was triggered, the Government should have pursued new tactics to discover Defendant, but the same unsuccessful surveillance and drive-bys of the primary residence continued to no avail,

even while Defendant was openly walking around the very neighborhood that was being surveilled. Based on these facts and the analysis above, the Government cannot rebut the presumption of prejudice and on the record before the Court. Defendant's Motion for Dismissal of the Indictment is granted on the ground that the Government's delay in arresting Defendant violated her rights under the Sixth Amendment.

**IT IS ORDERED** that Defendant's Motion to Dismiss the Indictment [18] is **GRANTED with prejudice.**

**SO ORDERED.**