UNITED STATES of America,
Plaintiff–Appellee,

v.

Daniel GRAHAM (96–3056) and Paul Lee
Duncan (96–3071), Defendants–
Appellants.

Nos. 96–3056, 96–3071.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 8, 1997.

Decided Oct. 21, 1997.

James A. Wilson, Asst. U.S. Attorney (argued and briefed), U.S. Attorney Office, Dayton, OH, for United States of America.

Gordon Hobson (argued and briefed), Pamela Prude–Smithers (briefed), Federal Public Defender's Office, Columbus, OH, for Daniel C. Graham.

Suzanne N. Philbrick (argued and briefed), Portage, IN, for Paul Lee Duncan.

Before: KEITH, SILER, and MOORE, Circuit Judges.

KEITH, Circuit Judge.

On August 13, 1987, Paul Lee Duncan was indicted for commission of a RICO offense. The same day, Duncan and Daniel Graham were indicted for conspiracy to commit a RICO violation. Trial on the charges commenced on May 15, 1995. The jury found both men to be guilty as charged. Duncan was sentenced to two consecutive twenty-year terms of imprisonment. Graham was sentenced to fifteen years of imprisonment. Both men filed timely Notices of Appeal raising multiple issues. For the reasons discussed below, we **REVERSE.**

## I.

The defendants were indicted as part of a burglary ring, which regularly broke into homes in several states and sold stolen merchandise taken from the homes. During the course of the burglaries, the group committed several assaults. One young woman was murdered. Testimony indicated that the members of the group all carried guns during the burglaries. Testimony also indicated that the group functioned according to a pattern: each member had a specialty, or job, during the burglaries, but all voted on which areas and houses to rob. They also jointly decided how to divide the stolen property, which was split equally among the members of the group. The investigation indicated that the group was responsible for approximately 300 burglaries over the course of a couple of years.

The first predicate act charged was burglary at the Merkle home. During this burglary, Roberta Peters was shot and killed. Her body was dumped down a slope behind the home. The home was ransacked, and various pieces of silver were stolen. Some of the stolen items were engraved with the family name. They were later recovered from a river nearby. Testimony indicated that the group disposed of the silver after the killing. Blood was found in the kitchen of the home, and a cartridge was found on the rear steps of the porch. This was matched to the bullet removed from Ms. Peters's head. The testimony at trial connected Duncan and Graham to the burglary, and Duncan to the shooting.

The second predicate act charged was a break-in at the Van Eck home. The group stole an extensive coin collection. The coins were identifiable by handwritten markings on the coin holders and on inventory lists. Search warrants for the defendants' residences were executed, and coins traceable to the burglary were recovered from both homes.

The third predicate act was a burglary at the home of James Williams, who ran a gold, silver, and coin business from his residence. His wife was at home during the burglary and was struck on the head three times with a heavy metal object. The testimony at trial connected the defendants to this burglary and established that Duncan was the individual who was responsible for beating Lynnea Williams.

The fourth predicate act charged involved Duncan and another co-defendant, James Stelts. Testimony at trial established that Stelts held a gun on the elderly woman who resided at the home. The resident was later tied up. The group stole jewelry and a coin collection. On the way out of the home, robbers took some fudgesicles from the refrigerator and threw the wrappers on the ground.

The indictments in this case issued in August of 1987. Trial on the indictment did not commence until May of 1995. Thus, the time between the indictment and the trial was almost eight years. The record illustrates that this incredible delay resulted from a number of things including numerous continuances, motions, delays in briefing, requests for extensions, discovery disputes, scheduling problems, attorney changes, and a significant delay caused by the state murder trial of co-defendant Stelts. The district court acknowledged the inordinately slow progress of the case, and the fact that the defense continued to raise the speedy trial issue. However, the record demonstrates that the district court failed to assert itself in an attempt to move the process along.

## II.

■ The Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const., amend. VI. The right to a speedy trial is "one of the most basic rights preserved by our Constitution." *Klopfer v. North Carolina*, 386 U.S. 213, 226, 87 S.Ct. 988, 995, 18 L.Ed.2d 1 (1967). "The speedy-trial safeguard is premised upon the reality that fundamental unfairness is likely in overlong prosecutions." *Dickey v. Florida*, 398 U.S. 30, 54, 90 S.Ct. 1564, 1577, 26 L.Ed.2d 26 (1970).

However, the right to a speedy trial is also one of the more difficult Constitutional rights to address because it is, by nature, inexact. As the Supreme Court has noted, "[t]he right of a speedy trial is necessarily relative." *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905). "Whether delay in completing a prosecution ... amounts to an unconstitutional deprivation of rights depends upon the circumstances." *Pollard v. United States*, 352 U.S. 354, 361, 77 S.Ct. 481, 485, 1 L.Ed.2d 393 (1957). This conception of the rights as a relative one flows from our recognition of the fact that "the ordinary procedures for criminal prosecution are designed to move at a deliberate pace." *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966). Thus, each prosecution requires careful balancing of the desire to avoid undue speed and the need to prevent inordinate delay.

Careful consideration of the individual circumstances of a case necessitates an ad hoc approach to speedy trial cases. To assist courts in performing this balancing test, the Supreme Court has isolated four factors which courts must weigh in considering whether a defendant's right to a speedy trial has been violated: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of right; and 4) prejudice suffered by the defendant as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972).

■ The first factor acts as a triggering mechanism. If the length of the delay is not so long as to give rise to a presumption of prejudice, the other factors need not be considered. *Id.* In this case, almost eight years passed between the indictment and trial. This delay is so extraordinary that it cannot be seriously contended that it was not presumptively prejudicial. *Id.* at 533, 92 S.Ct. at 2193 (five years between arrest and trial was "extraordinary"); *see also United States v. Mundt*, 29 F.3d 233, 235 (6th Cir.1994) (delay of three and a half years enough to satisfy the initial burden).

■ The second factor, the reason for the delay, requires the court to include in its analysis the fact that certain types of delays are not only acceptable, but vital to a fundamentally fair trial. Thus, the court must consider whether the reasons for the extraordinary delay are of a sort that work for the good of the accused, or against him. However, "the prosecutor and the court have an 'affirmative constitutional obligation' to try the defendant in a timely manner", and thus, the burden is on the prosecution to explain the cause of the pre-trial delay. *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir.1987) (quoting *Atkins v. Michigan*, 644 F.2d 543, 547 (6th Cir.1981)).

In the present case, every party bears some responsibility for elements of the delay. The government contends that the entire period of delay is attributable to the defendants because a motion filed by the defense was pending throughout most of the pre-trial period. However, this assertion overlooks the fact that progress on the motion was stymied by the government's refusal to turn over requested discovery materials. Because the government is entitled to withhold materials which it legitimately believes are not discoverable, the fault for this delay must fall on the district court. Ultimately, the court bears the responsibility of resolving discovery disputes of this sort. If the court had stepped in at any point in the eight year delay, the motion would not have been pending for such an extended amount of time. Further, the district court waited over one year to appoint new counsel for one of the co-defendants. When counsel was finally appointed, the lawyer chosen was one who had volunteered to undertake the assignment at

the time of prior counsel's withdrawal over a year earlier.

The government correctly points out that the defense requested a variety of extensions and continuances, and that the responsibility for those delays must fall on the defendants. However, the record reveals that these requests account for only a few months of delay. Further, those requests stemmed from a desire to mount a well-prepared defense, not from dilatory tactics employed solely to delay the trial. A far more significant period of delay resulted when the defendants were made to wait while co-defendant Stelts was tried on state murder charges. The decision to release Stelts to the state for trial was made upon a motion by the government. The government also took nearly one year to provide the district court with the name of a Department of Justice official which the court had explicitly requested. Thus, having reviewed the entire record it appears that much of the blame for the delay must fall on the government and on the district court. Therefore, this second factor also weighs in favor of the defendants. They repeatedly asserted their right to a speedy trial. Moreover, they asserted at several times during the pre-trial period that their right had been violated.

The last factor to be considered is the issue of prejudice flowing from the delay. This factor must be considered with an eye to the interests which the right to speedy trial is designed to preserve. The Supreme Court has isolated three such interests: 1)prevention of oppressive pre-trial incarceration; 2) avoidance of undue worry and anxiety by the accused; and 3) limitation of the possibility that the defense will be impaired by the passage of time. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2192. The last consideration is necessarily the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

■ The Sixth Circuit requires a defendant to demonstrate "substantial prejudice." *United States v. White,* 985 F.2d 271, 276 (6th Cir.1993). However, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett v. United States,* 505 U.S. 647, 655, 112 S.Ct. 2686, 2692, 120 L.Ed.2d 520 (1992). In fact, impairment of the defense is infrequently susceptible of particularized proof because "time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Id.* (quoting *Barker,* 407 U.S. at 532, 92 S.Ct. at 2192). Given this fact, "we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter identify." *Doggett,* 505 U.S. at 655, 112 S.Ct. at 2692. This assumption is not enough to ground a Sixth Amendment claim standing alone, but it is an important factor to be considered. *Id.* at 655–56, 112 S.Ct. at 2692–93. Further, its importance increases with the length of the delay. *Id.* at 656, 112 S.Ct. at 2693.

■ It goes almost without saying that the death or unavailability of a witness, as well as the inability of defense witness to accurately recall the events at issue, prejudices the defense. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2192. In the present case, the defendants point to several witness-related issues stemming from the prolonged pre-trial delay. The several law enforcement officers who testified were unable to recall a variety of details about the crime scene such as footprints and tire tracks. Further, the coroner who performed the autopsy on Roberta Peters was dead. The coroner's testimony was given by someone who had never examined the body. The officer who interviewed the government's "star witness," Kathy Silverman, testified that his notes of that interview no longer existed. Finally, one of the crime victims was in a nursing home suffering from dementia at the time of the trial.

■ It must be noted that the defendants do not comment on how failing memory on the part of what are largely prosecution witnesses demonstrates actual prejudice to their case. However, the impression left by the defendants' briefs is that the dimmed memory interfered with effective cross-examination. One of the fundamental elements of a fair trial is the right of the accused to cross-examine the witnesses against him. *United States v. Gomez–Lemos,* 939 F.2d

326, 329 (6th Cir.1991) (right of confrontation and cross-examination is an essential and fundamental requirement of a fair trial). Therefore, to the extent that memories were impaired by time, the defense was clearly prejudiced by a lessened ability to probe the details of the witnesses' recollection.

■ Further, the Supreme Court has instructed us that the inability of the accused to pinpoint how exactly he was prejudiced by delay is not fatal to his claim that his speedy trial right was violated. *Doggett*, 505 U.S. at 657, 112 S.Ct. at 2693. Where it is clear that the court and the government were responsible for the extraordinary delay, and it is clear that the delay was caused by negligence rather than bad faith, prejudice can be presumed. *Id.* The strength of that presumption grows as the length of the delay extends. *Id.*

It is because the Sixth Amendment right to a speedy prosecution is so fundamental to our justice system, yet so difficult to define in a concrete manner, that it is incumbent upon our Court to zealously defend it. It is only by forcefully admonishing those that flout this right that the Court can define boundaries to guide litigants and courts, and prevent abuses of the right such as the case before us. Here, the delay was eight times that necessary to trigger judicial review, and the presumption of prejudice is undiluted by dilatory tactics on the part of the defense. Thus, the defendants are entitled to relief.

### III.

For the foregoing reasons, the judgment entered by the district court is **REVERSED.**