RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0004p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

RYAN BROWN,

*Petitioner-Appellant,*

v.

KENNETH ROMANOWSKI, Warden,

*Respondent-Appellee.*

No. 15-1823

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:13-cv-11367—Matthew F. Leitman, District Judge.

Argued: October 19, 2016

Decided and Filed: January 9, 2017

Before: BOGGS, SUHRHEINRICH, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Rajiv Mohan, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant. Raina I. Korbakis, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Rajiv Mohan, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant. Timothy C. Erickson, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

1

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge.

Petitioner-Appellant Ryan Brown, a state prisoner, appeals the district court's denial of his petition for writ of habeas corpus based on violations of his speedy-trial rights and related claims of ineffective assistance of counsel.[1]  We affirm.

**I.**

Brown's convictions resulted from controlled buys of cocaine initiated and made by an informant on September 16, November 8, and December 7, 2005, and on January 10, 2006. *See People v. Brown*, No. 284568, 2009 WL 1883978, at *1 (Mich. Ct. App. June 30, 2009) (per curiam).  The informant, Jawad Mirza, called Detective Perry Dare, proposing "[t]o work with him," in exchange for sentencing consideration.  Mirza told Dare that Brown was a drug dealer and agreed to set up some controlled purchases to Brown.  Mirza made the first call to Brown in September 2005, offering to buy an ounce of cocaine.  They met on September 16, 2005, at Brown's apartment.  Before Mirza went to Brown's apartment, Dare searched Mirza's car and person.  Dare also gave Mirza an audio recorder and $800 to purchase the drugs.  After the exchange, Mirza gave Dare the cocaine and the recording device.

Mirza made similar purchases over the next few months.  On November 8, 2005, Mirza attempted to purchase two ounces of cocaine from Brown.  Prior to the transaction, Dare searched Mirza, gave him $1,700, and provided an audio recorder.  Undercover police officer Kenneth Spencer accompanied Mirza.  Spencer waited in the car during the transaction, which took place at Brown's cousin's house.  Mirza was able to purchase only one ounce of cocaine. Mirza returned $850 and gave Spencer the cocaine.

---

[1]Although the district court granted a certificate of appealability on two issues, due-process delay and Sixth Amendment speedy-trial delay, Brown presented only the speedy-trial claim to this court.  He has therefore abandoned the due-process-delay issue on appeal. *See United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006).

On December 7, 2005, Mirza met Brown again at Brown's cousin's house. Dare searched Mirza and gave him $1,700 to buy two ounces of cocaine. Dare also supplied Mirza with an audio recorder. Spencer accompanied Mirza. Brown gave Mirza two ounces, which Mirza later gave to Spencer. Afterwards, Dare searched the car, patted Mirza down, and retrieved the recorder.

Sergeant Pete Simerly offered "support surveillance," for the four buys from a nearby vehicle.

On January 10, 2006, Mirza conducted a "buy bust" of Brown. Mirza and Spencer went to Brown's apartment. Brown got into Mirza's car and Spencer got out, but waited within arm's length of the car during the transaction. As Mirza was about to weigh the drugs, the take-down team arrested Brown. Dare searched Mirza and the vehicle prior to the bust.

The police took Brown to the Oakland County Jail, where he was interviewed by Dare and another officer. Dare gave Brown his *Miranda* warnings using a standard form. Brown signed the form and waived those rights. Brown also admitted in a written statement that he sold cocaine to Mirza four times. Brown identified his supplier, "Gerald Jackson."[2] Brown was then released from custody.

On January 27, 2006, the State issued a criminal complaint against Brown, and secured an arrest warrant on February 27, 2006.[3] Brown was unaware of these developments until he was arrested on September 24, 2007, pursuant to an unrelated bench warrant concerning a child-support dispute. On that date, Brown was arraigned on the charges that he sold cocaine to Mirza on four occasions.

Brown was tried on the drug charges on February 15-16, 2008. Mirza, Dare, Spencer, and Simerly testified for the prosecution; the defense did not call any witnesses. Mirza's defense theory was that he did not sell the cocaine to Mirza, but simply permitted Mirza to use his scale to weigh cocaine that Mirza already possessed. The audio recordings of Mirza's transactions

---

[2]"Gerald Jackson" was also known as "Mickey Jackson."

[3]Although it is partially blacked out, this document also contains an entry dated January 10, 2006 listing the same four charges.

with Brown were unavailable at trial. Dare testified that he lost the tapes in the course of several moves. Brown was convicted of all four offenses: two counts of delivering between 50 and 450 grams of cocaine (Counts 1 and 2) and two counts of delivering less than 50 grams of cocaine (Counts 3 and 4). Brown was sentenced to between 15 and 40 years' imprisonment on Counts 1 and 2, and between 2 ½ and 40 years' imprisonment on Counts 3 and 4, all to run concurrently.

Brown appealed to the Michigan Court of Appeals, raising two issues: (1) that trial counsel was ineffective for failing to request separate trials on each of the charged offenses, and (2) that the trial court erred in finding that his written confession was voluntary. The Michigan Court of Appeals affirmed. *See People v. Brown*, 2009 WL 1883978, at *2. The Michigan Supreme Court denied Brown's application for leave to appeal. *See People v. Brown*, 777 N.W.2d 166 (Mich. 2010) (table).

Brown filed a motion for relief from judgment in the state trial court. He sought relief on the following grounds: (1) that he was denied due process when exculpatory audio recordings were lost during the twenty-month delay between Defendant's arrest and trial and that counsel was ineffective for failing to move for dismissal on such grounds; (2) that he was denied effective assistance of counsel when trial counsel failed to investigate, and when appellate counsel failed to raise, the foregoing issue on direct appeal; (3) that trial counsel was ineffective for failing to uncover evidence that his confession was involuntarily made after he was threatened by police; and (4) that appellate counsel was ineffective for failing to raise this issue on direct appeal. Brown later filed a motion to amend his motion for relief from judgment, adding three grounds for relief. Of relevance here was Brown's claim that "[t]he state violated the VI & XIV Amendment rights to a speedy trial and due process by conducting the trial more than two years after Brown's arrest which caused actual prejudice according to *Barker v. Wingo*" and that trial counsel was ineffective for failing to assert his speedy-trial rights and appellate counsel was ineffective for failing to raise these issues on direct appeal. *Id.* The trial court denied the motion for relief from judgment, holding that Brown had not met his burden of establishing a right to relief under MCR 6.508(D)(3) because he had not demonstrated good cause for failure to raise the issues on direct appeal. In that ruling, the court addressed all of the

issues raised in the motion for relief from judgment and none of the issues raised in the amended motion and did not otherwise refer to the amended motion. *Id.* Brown sought appellate review, but the Michigan Court of Appeals and Michigan Supreme Court each denied review because Brown "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

Brown filed a federal habeas petition in 2013. The district court rejected all of Brown's claims, but granted a certificate of appealability on two grounds: (1) that Brown's due-process rights were violated by the twenty-month delay between the commission of his offenses in late 2005 and early 2006 and his second arrest in September 2007 (Offenses-to-Second-Arrest Delay); and (2) Brown's Sixth Amendment speedy-trial right was violated by the delay between his first arrest in January 2006 and his trial in February 2008 (First-Arrest-to-Trial Delay).

Applying the *Barker v. Wingo*, 407 U.S. 514 (1972) factors, the district court determined that no speedy-trial violation had occurred. The court found that although the delay exceeded a year, the State was at most negligent, Brown failed to assert the right after he became aware of the charges, and, given the overwhelming evidence against him, Brown had not shown prejudice.

This appeal follows.

**II.**

The district court entered final judgment on July 1, 2015, and granted a certificate of appealability on two issues. Brown filed a timely notice of appeal on July 14, 2015. This court has jurisdiction under 28 U.S.C. §§ 1291 and 2253(c), limited to the claims that were certified for appeal. *Id.* § 2253(c)(1).

**III.**

This court reviews the district court's denial of habeas relief de novo. *Keys v. Booker*, 798 F.3d 442, 449 (6th Cir. 2015). The scheme set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA) sharply curtails the scope of a federal habeas court's review if a claim has been "adjudicated on the merits in State court." *Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013). If an "on the merits" decision was made, then a federal habeas court may only grant relief to a prisoner if that decision (1) "was contrary to, or involved an unreasonable

application of, clearly established Federal law," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d).  In this case, the district court held, and both parties agree on appeal, that the deferential standard of 28 U.S.C. § 2254(d) does not apply to a review of Brown's habeas claims because no state court adjudicated them "on the merits."[4]

The Supreme Court has made clear that there exists a rebuttable presumption that a state court has reached the merits of a petitioner's federal claims.  *See Harrington v. Richter*, 562 U.S. 86, 99 (2011) (presumption applies when a state court issues an unexplained order denying relief on all claims); *Johnson*, 133 S. Ct. at 1091-92 (likewise finding the presumption applicable when a state court addresses some, but not all, of a petitioner's claims).  This presumption is warranted given that it is "by no means uncommon for a state court to fail to address separately" every potential claim raised by a defendant.  *Id*. at 1096.  For example, a court in a state that interprets a parallel state and federal constitutional provision identically may decide that a discussion of the state claim adequately disposes of the duplicative federal claim.  *Id.* at 1094-95.  Similarly, state courts have discretion to decide that a "fleeting reference to a provision of the Federal Constitution" does not merit its attention, or that a claim may simply be "too insubstantial to merit discussion."  *Id.* at 1095.

While the *Richter/Johnson* presumption is not irrebuttable, it is a "strong one that may be rebutted only in unusual circumstances," *id*. at 1096, such as "when there is reason to think some other explanation for the state court's decision is more likely."  *Richter*, 562 U.S. at 99.  One example of when the presumption may be rebutted occurs when a state court rejects a federal claim "as a result of sheer inadvertence."  *Johnson*, 133 S. Ct. at 1097.

To determine whether the district court and parties are correct that no state court reached the merits of Brown's speedy trial and attendant ineffective assistance of counsel claims, this court "looks through" unexplained orders to the "last reasoned" decision of the state courts.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).  Form orders denying appellate review under MCR 6.508(D) are "unexplained."  *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en

---

[4]Although the parties do not dispute it, this court has an independent obligation to determine the proper standard of review. *See Moritz v. Lafler*, 525 F. App'x 277, 285 & n.5 (6th Cir. 2013) (and cases cited therein).

banc).  Thus, the order under review in this case is the state trial court opinion and order denying Brown's motion for relief from judgment.  *See Peoples v. Lafler*, 734 F.3d 503, 511 (6th Cir. 2013).

The state trial court expressly addressed each of the claims raised in Brown's original post-conviction motion, denying them on procedural grounds, but did not address *any* of the claims raised in Brown's amended motion.  There appears to be no sound rationale for the state trial court's silence on the amended claims, and specifically, on Brown's Sixth Amendment claim:  It was sufficiently raised as a separate federal claim by way of more than a mere "fleeting reference"; it was not "too insubstantial to merit discussion," a fact underscored by the district court's conclusion that it was at least meritorious enough to warrant a certificate of appealability; and it was not covered by any other claims by implication.  *See Johnson*, 133 S. Ct. at 1094-95.  Instead, it seems likely that the state court "inadvertently overlooked" all of Brown's claims in his amended motion.  *Id*. at 1097.  Otherwise, why would the state trial court have allowed him to amend his motion in the first place?  Given the clear demarcation between the original claims—all addressed—and the amended claims—none even mentioned—, as well as the importance of the federal right at issue and the thoroughness with which it was raised, we will assume that the *Richter/Johnson* presumption that unaddressed claims were adjudicated on the merits is rebutted, *id.*, and review Brown's claims de novo, noting that they fail even under this more searching level of review.  *Gumm v. Mitchell*, 775 F.3d 345, 377 (6th Cir. 2014).

We review questions of law related to speedy-trial violations de novo and questions of fact under the "clearly erroneous" standard.  *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006).

## IV.

The Sixth Amendment guarantees in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  These rights apply to the states through the Fourteenth Amendment.  *Klopfler v. North Carolina*, 386 U.S. 213, 223 (1967).  The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges,

and the risk that evidence will be lost or memories diminished. *Doggett v. United States*, 505 U.S. 647, 654 (1992); *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986); *United States v. MacDonald*, 456 U.S. 1, 7-8 (1982); *Barker v. Wingo*, 407 U.S. 514, 532-33 (1972); *United States v. Marion*, 404 U.S. 307, 320 (1971); *United States v. Ewell*, 383 U.S. 116, 120 (1966). The sole remedy for a violation of the speedy-trial right is dismissal of the charges. *See Strunk v. United States*, 412 U.S. 434, 439-40 (1973); *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999).

In *Barker*, the Supreme Court established a four-factor test for determining whether a defendant has been denied the constitutionally guaranteed right to a speedy trial. *Barker* held that a court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. No one factor is dispositive. Rather, they are related factors that must be considered together with any other relevant circumstances. *Id.* at 533.

## A.

### 1.

As a threshold matter, we are asked to decide when the speedy-trial right was triggered. The speedy-trial right does not apply until the defendant is "accused." *See Marion*, 404 U.S. at 313. The parties dispute when that occurred. The district court did not decide the issue, giving Brown "the benefit" of the January 2006 date.

As a general proposition, the right usually attaches when the defendant is arrested or indicted, whichever is earlier. *Id.* at 320; *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005). Brown claims that he was "arrested" for the first time on January 10, 2006, so that is the proper trigger date, which means that he suffered a twenty-five month delay between this date and his trial on February 15, 2008. The State disagrees, contending that the "January 10, 2006 trip to the police station did *not* begin a period of liberty curtailment for Brown," Resp. Br. at 24, because Brown was not subject to "arrest *and holding to answer*" to criminal charges. *Id.* at 25 (quoting *Marion*, 404 U.S. at 320 (emphasis added by Respondent)); *see also MacDonald*, 456 U.S. at 8 ("The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration

prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges."). Thus, according to the State, the appropriate measure is the September 24, 2007 arrest date when Brown was arraigned.

The State adds that another core concern of the Sixth Amendment—"anxiety and concern accompanying public accusation," *Marion*, 404 U.S. at 320—is also not implicated, because Brown did not think that he had any pending charges against him after the January 10, 2006 arrest. Indeed, Brown reported in a Protective Services Investigation Summary that he went willingly with the police on January 10, 2006, and voluntarily submitted to questioning, and further admitted at the evidentiary hearing prior to trial that he "wasn't charged with" crimes related to his transactions with Mirza, "wasn't booked in" on any charges, and wasn't aware that he had been arrested on January 10, 2006. Thus, the State argues that Brown was not accused of the drug charges until he was arraigned on September 24, 2007.[5]

If the State is correct, the answer is easy: a five month delay—from September 2007 to February 2008—is not "uncommonly long," *Doggett*, 505 U.S. at 651, and would not trigger analysis of the remaining *Barker* factors. *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) ("The first factor is a threshold requirement, and if the delay is not uncommonly long, judicial examination ceases.").

Nonetheless, in *Doggett*, the Supreme Court held that the "speedy trial enquiry" was triggered by an eight-year delay between the defendant's indictment and arrest, even though the defendant was unaware of the charges against him and not subject to pretrial detention, because he suffered the possibility that his defense would be impaired. In the *Doggett* majority's view, the latter is "the most serious" prejudice, "'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532); *cf. id.* at 662, 665 (Thomas J., dissenting) (stating that "the Speedy

---

[5]Notably, the State does *not* assert that the filing of a criminal complaint and arrest warrant fail to trigger the Speedy Trial Clause protections. Instead it argues that "[t]he seeming issuance of a complaint or an arrest warrant . . . did not matter because the record indicates that Brown had no idea about them until his arrest in September 2007." Resp. Br. at 27. In other words, according to the State, "[t]he facts of Brown's case, up until September 24, 2007, do not implicate the interests protected by the right to a speedy trial." *Id.*

Trial Clause does not independently protect against prejudice to the defense"; faulting the majority for refusing to acknowledge "two conflicting lines of authority," one declaring that impairment of the defense "is an independent and fundamental objective of the Speedy Trial Clause" (*Barker*) and the other declaring the opposite (*Marion, MacDonald, Loud Hawk*)).

Like the defendant in *Doggett*, Brown did not suffer restraints on his liberty or mental anguish until was arrested, but he nonetheless argues that he suffered prejudice by the delay. "[B]ecause we are dealing with a fundamental right of the accused," *see Barker*, 407 U.S. at 533, and receiving conflicting guidance from Supreme Court precedent, we will likewise assume that the speedy-trial clock began to tick in January 2006.

**2.**

"The first factor, length of the delay, is a triggering mechanism." *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007). A one-year delay is presumptively prejudicial and triggers analysis of the remaining *Barker* factors. *Doggett*, 505 U.S. at 652 n.1; *Maples*, 427 F.3d at 1026. Here, since we are assuming a delay of twenty-five months, this factor favors Brown.

**B.**

In assessing the second factor, the reason for the delay, the court considers who is most at fault—the government or the defendant. *United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003). "Governmental delays motivated by bad faith, harassment or attempts to seek a tactical advantage weigh heavily against the government." *Id.* at 553. Negligence and unexplained delay also weigh against the government, albeit less heavily, "'but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'" *Id.* at 554 (quoting *Barker*, 407 U.S. at 531). The State bears the burden of explaining the cause of the delay. *See Brown*, 169 F.3d at 349; *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir. 1987).

After the January 10, 2006 arrest, the State charged Brown in a complaint and obtained a warrant for his arrest. The State claims that "the record gives an indication, however faint, that the government looked to get a bigger fish (i.e. Gerald Jackson) and tried to offer Brown the

opportunity to cooperate" which possibly explains some of the delay. Resp. Br. at 32. In support of this suggestion, the State points to: Dare's testimony that he "discussed with [Brown] who his supplier was," Dare's testimony that he never obtained a search warrant for Brown's apartment, and trial counsel's testimony at the sentencing hearing that Brown "was given an opportunity" to cooperate with the police (but felt it "dishonorable to do so"). Brown counters that the record equally suggests that the State forgot about him until it brought him in on a bench warrant concerning a child-support dispute. Furthermore, Dare testified that the investigation into the alleged supplier ended "[s]hortly" after Brown's arrest date, when the police learned that Gerald Jackson had been killed.

The delay is exclusively the State's fault. However, as the district court held, "[o]n this record, the Court cannot conclude that the delay was anything but negligent." As the court noted, nothing in the record suggests that the delay was meant to harass, was in bad faith, or was an attempt to gain a tactical advantage (perhaps other than to seek Brown's cooperation) and Brown does not claim otherwise.

Brown points to *United States v. Ferreira*, 665 F.3d 701 (6th Cir. 2011). The defendant in *Ferreira* was in state custody when the federal government charged him with violations of 21 U.S.C. §§ 846 and 841(b)(1)(A). *Id.* at 704. The government misplaced certain notifications and then sent its petitions to have the defendant released for prosecution to the wrong jail. *Id.* Over the next three years, the government "lodged federal detainers" with state authorities on two occasions, before finally sending another petition to the correct jail. *Id.* We affirmed the district court's finding that the government was solely responsible for the thirty-five-month delay between indictment and guilty plea, which the lower court "rightly characterized as 'beyond simple negligence.'" *Id.* at 706 (quoting the district court). There, however, "[n]either party offer[ed] a reason for finding either that the Government was less or more than grossly negligent," so we agreed that this factor weighed in favor of the defendant. *Id.* Furthermore, unlike here, the defendant in *Ferreira* was in jail for the entire thirty-five months, *id.*, and repeatedly asserted his speedy trial rights in the trial court, *see United States v. Ferreira*, No. 1:05-CR-92-3, 2009 WL 311136, at *1-3 (E.D. Tenn. Feb. 6, 2009), *rev'd*, 665 F.3d 701 (6th Cir. 2011), making the government's several bungled attempts all the more egregious. In this

case, once Brown was "inadvertently discovered" and arraigned, the case proceeded to trial in an expeditious manner. Thus, on balance, the State's delay here did not cross the divide from simple negligence to gross negligence. *See Ferreira*, 665 F.3d at 706.

Brown also directs our attention to two other cases cited in *Ferreira*. In *United States v. Ingram*, 446 F.3d 1332 (11th Cir. 2006), the Eleventh Circuit found the two-year post-indictment delay "intolerable" where the defendant had been accused of a straightforward gun crime and the record did "not support any reasonable explanation for the [g]overnment's neglect in executing the warrant," especially since the government had the evidence it needed to prosecute him on the date of the indictment, the government knew the defendant's whereabouts, and the defendant did not demonstrate actual prejudice from the delay. *Id*. at 1337, 1339. Brown is right that here the State had all the evidence it needed to prosecute him in early 2006, that he was easily locatable, and that the State offered no reason for the delay. But Brown overlooks a key factor that tipped the balance in the defendant's favor in *Ingram* that is not present in this case: pre-indictment delay. In addition to a two-year post-indictment delay, the *Ingram* court considered the "inordinate" two-and-one-half year pre-indictment delay, which made the two-year post-indictment delay "weigh[] more heavily" against the government. *Id*. at 1339 (holding that "once the Sixth Amendment's speedy trial analysis is triggered, it is appropriate to consider inordinate pre-indictment delay in determining how heavily post-indictment delay weighs against the [g]overnment"). By contrast, the pre-indictment delay in this case was about five months—from September 2005, when the police initiated controlled buys from Brown, to January 2006, when he was initially arrested and a criminal complaint issued.

In *United States v. Erenas-Luna*, 560 F.3d 772 (8th Cir. 2009), the Eighth Circuit affirmed the district court's conclusion that the government was "'clearly seriously negligent'" where the delay between indictment on drug charges and trial was almost four years (three of which were attributable to the government). *Id*. at 777-78. There the government readily admitted that it had "'dropped the ball'" and let the defendant's case "'slip through the cracks,'" because it did not try to locate and arrest the defendant and "missed multiple opportunities to apprehend" the defendant. *Id*. at 775, 777. Like Brown, the defendant in *Erenas-Luna* was unaware of the indictment and therefore was not responsible for the delay in his arrest. *Id.*

*Erenas-Luna* can be distinguished: here the delay was much shorter, and the State's negligence was not egregious. Furthermore, though the police appeared to have "'made no serious effort'" to locate Brown, *see id.* (quoting *Doggett*, 505 U.S. at 652-53), they arraigned him on the drug charges the same day he came to the attention of authorities via the child-dispute warrant.

Thus, as the district court held, this factor weighs in favor of Brown, but does not weigh heavily against the State.

**C.**

Although he did not assert the right until post-conviction, Brown argues that this should not count against him because he did not learn about the charges until late September 2007 and had incompetent counsel thereafter. Although "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial," *Barker*, 407 U.S. at 532, it cannot count against him when he didn't know about the pending charges (the first nineteen months), *cf. Robinson*, 455 F.3d at 608, or when he was represented by incompetent counsel (the last five months), *see Barker*, 407 U.S. at 536.

The district court "acknowledge[d] that [Brown] could not have demanded a speedy trial until he was formally charged in September 2007" because he "lacked a forum" until then, but nonetheless held that this factor weighed against him because he did not make a demand after September 24, 2007. In *Barker*, the Supreme Court stated that this factor "is closely related to the other factors . . . . most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely the defendant is to complain." *Barker*, 407 U.S. at 531. Brown did not complain about the prejudicial effect of the lost recordings until post-conviction pleadings, and, as discussed below, did not suffer personal prejudice. Thus, as the district court held, this factor does not really favor Brown. However, given his allegation of incompetent counsel, we do not count it against him.

**D.**

The last factor, prejudice, should be assessed "in the light of" three interests: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern, and (3) to

minimize damage to the defense. *Barker*, 407 U.S. at 532. The third factor is "the most serious," "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. Only the third factor is relevant here because Brown was not incarcerated and he was not aware of the charges until five months before trial.

In this circuit, the defendant is required to show that the delay caused "'substantial prejudice." *Ferreira*, 665 F.3d at 706 (quoting *Schreane*, 331 F.3d at 557).

Brown contends that he is entitled to a presumption of prejudice and that he suffered actual prejudice. We disagree.

**1.**

In *Doggett*, the Supreme Court made clear that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655. This is because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id*. Thus, presumptive prejudice "is part of the mix of relevant facts, and its importance increases with the length of the delay." *Id*. at 656. If an accused cannot pinpoint the harm caused by the delay, the court scrutinizes the reason for the delay. *See id*. at 657. "When there is evidence of negligence on the government's part, but no bad faith, judicial 'toleration of such negligence varies inversely with its protractedness.'" *Schreane*, 331 F.3d at 559 (quoting *Doggett*, 505 U.S. at 657).

Brown claims that he is entitled to a presumption of prejudice because the delay was more than two years, the government doesn't have a legitimate excuse, the crimes were simple, Brown was easy to find, and the State had all its proof against him when it arrested him.

The pre-trial delay in this case is twenty-five months, which falls between cases where we have found the delay did not generate a presumption of prejudice, *see, e.g., United States v. Jackson*, 473 F.3d 660, 667 (6th Cir. 2007) (holding that a twenty-month delay between indictment and arrest, attributable to government's negligence, "was not so long as to justify an inference of prejudice at the fourth step of the *Barker* inquiry"); and cases that have presumed prejudice, *see Ferreira*, 665 F.3d at 707-08 (finding a thirty-five month delay based on the

government's negligence to be presumptively prejudicial); *Dixon v. White*, 210 F. App'x 498, 502 (6th Cir. 2007) (holding that a forty-one month delay—where only thirty-three of those were attributable to the government—was "uncommonly long" and presumptively prejudicial); *see also Erenas-Luna*, 560 F.3d at 780 (concluding that three-year delay between indictment and arraignment due to "the serious negligence of the government" triggered presumption of prejudice); *Ingram*, 446 F.3d at 1339-40 (holding that two-year delay caused by egregious government negligence created presumption of prejudice); *see generally Maples*, 427 F.3d at 1031 (citing cases).

But as *Ferreira* indicated, there is no "bright-line rule." *See Ferreira*, 665 F.3d at 709. Rather, courts must conduct "'a functional analysis of the right in the particular context of the case.'" *Id.* (quoting *Barker*, 407 U.S. at 522); *see also id.* at 706 (holding that the relevant mix of factors included gross government negligence, which weighed more heavily against the government than simple negligence, and a thirty-five to forty-month delay between indictment, arraignment, and guilty plea). Employing a functional analysis, we find that Brown was not entitled to a presumption of prejudice under the fourth factor, because the delay here was not extreme, the state was negligent at most, Brown was not incarcerated during the delay, and he did not suffer undue anxiety because he was unaware of the charges. *See Jackson*, 473 F.3d at 668 (holding that dismissal for speedy-trial violation was not warranted because a twenty-month delay was not "extraordinary under our precedents," there was no evidence of bad faith by the government, and no actual prejudice to the defendant). Finally, Brown actually pinpoints several items of missing evidence, thereby lessening the need for the presumption. *See Doggett*, 505 U.S. at 657.

**2.**

Brown claims that the prejudice here is "obvious" and therefore actual because the State lost the tapes of Mirza's conversations with Brown. *See Dickey v. Florida*, 398 U.S. 30, 38 (1970) (finding "loss of police records" along with the death of two potential witnesses and unavailability of other witnesses constituted actual prejudice). Brown asserts that the tapes were critical, because the State's case turned on Mirza's credibility and Mirza provided the only direct testimony that Brown dealt cocaine. During closing arguments, Brown emphasized that "the key

to this whole thing is [Mirza's] credibility, and that Mirza faced significant jail time, which "he was working off" and which "motivated him to do whatever he could to make Mr. Brown a guilty man." *Id*. at 534. In other words, Brown contends that the lost tapes could have helped him prove that Mirza was lying and that all he did was weigh the cocaine for Mirza.

But, as the district court held, Brown's theory that the audio recordings would have proven that he merely weighed and did not sell any drugs "cannot be squared with the overwhelming evidence that [Brown] was, in fact, guilty of selling drugs to Mirza." First, and most importantly, Brown confessed to the charges. As the state trial court found after an evidentiary hearing, Brown made a voluntary, knowing, and intelligent waiver of his rights before admitting to the four cocaine sales.

Second, in addition to the confession, the State shored up its case with testimony regarding the control measures employed. Mirza testified that someone always observed the controlled buys. Mirza also stated that the police searched his person and vehicle before and after each purchase and retrieved the drugs and any remaining money. Dare and Spencer confirmed Mirza's account. Thus, despite the missing tapes, Brown has not shown substantial prejudice. In fact, the lost tapes actually gave Brown the ability to attack an otherwise air-tight case.

Additionally, Brown claims that two of the officers forgot important details about the investigation—Spencer said he could not remember who searched Mirza and his car on one instance, and Sergeant Simerly testified that, "being that far back" he could not "remember all the details" of his surveillance on another occasion. Brown claims that these details were important to his defense, "which centered on convincing the jury that Mirza could have faked the sales despite police supervision." Pet. Br. at 29. Because of their "dimmed memory" Brown argues that he was less able to cross-examine the officers regarding the supervision of Mirza. *See Dixon*, 210 F. App'x at 502 (holding that the petitioner made a showing—albeit weak—that he suffered actual prejudice during a three-and-one-half-year delay where the petitioner's employer was no longer available to testify on his behalf); *Maples*, 427 F.3d at 1032-33 (holding that the petitioner suffered actual prejudice during a two-year delay because the missing witness "was apparently present at the scene," and "could very well have provided beneficial testimony";

also noting that the state's evidence was very weak); *United States v. Graham*, 128 F.3d 372, 375-76 (6th Cir. 1997) (finding actual prejudice after an eight-year delay because several of the officers who testified could not remember "a variety of details about the crime scene," the coroner who had performed the autopsy on the murder victim had died, and the officer who had interviewed the government's star witness had lost his notes of the interview, thereby limiting the defendant's ability to cross-examine them); *Redd*, 809 F.2d at 1272 (holding that "a good faith presumption should inure to the benefit of [the petitioner]" where the defendant consistently claimed that he was in another state at the time of the robbery in Kentucky and "had witnesses to support his claim").

Unlike the witnesses in *Maples*, *Dixon*, and *Redd*, Spencer and Simerly were available to testify. Moreover, they were government witnesses. Thus, contrary to Brown's assertion, "the inability of Officers [Spencer and Simerly] to remember particular facts," such as Spencer's failure to recall who searched Mirza on November 8, 2005 (Dare or Spencer), or Simerly's failure to remember every stop made by the surveilled vehicle on September 16, 2005, "did not undermine his defense; rather, it weakened the prosecution's case." *Schreane*, 331 F.3d at 558 ("'If the witnesses support the prosecution, its case will be weakened . . . [as] it is the prosecution which carries the burden of proof.'" (quoting *Barker*, 407 U.S. at 521) (alteration in original)). Therefore, "the partial memory lapses" of two of the State's four witnesses, "which defense counsel was free to highlight during trial, worked to the advantage of [Brown]." *Id.*

And, unlike the police witness in *Graham*, the memories of Spencer and Simerly were not so dim; both were able to recall many salient details about the controlled buys. Simerly testified about his role during the September 16, 2005 buy, as well as the "buy bust" on January 10, 2006. As for the September 16th buy, he remembered that Brown got into Mirza's vehicle for a very short period of time and that no one else got in or out of the vehicle. During the January 10th "buy bust," Simerly got Mirza out of the vehicle and discovered a plastic bag containing what he thought was cocaine on the passenger seat where Brown was sitting. Spencer provided detailed accounts for the three controlled buys in which he participated. In short, the State offered ample affirmative proof to rebut Brown's claims of prejudice. *See Doggett*, 505 U.S. at 658 n.4.

In sum, although some of the *Barker* factors favor Brown, as the district court held, he has not met his burden of establishing substantial prejudice.

**E.**

Brown also argues that this court does not need to find a violation of the Speedy Trial Clause in order to grant him relief because his trial and appellate counsel were each ineffective for failing to raise speedy-trial arguments. Thus, according to Brown, even if the court determines that Brown was not deprived of his right to a speedy trial, it should still conclude that he was deprived of the effective assistance of trial counsel or, alternatively, appellate counsel.

But the district court did not grant a certificate of appealability on ineffective assistance of counsel—only on the two delay claims. Under 28 U.S.C. § 2253(c), a state habeas petitioner seeking to appeal a district court's final order denying relief must first obtain a certificate of appealability that "indicate[s] which specific issue or issues" are suitable for appeal. 28 U.S.C. § 2253(c)(3). Thus, our review is limited to "the issues which are specified in the certificate of appealability." *Searcy v. Carter*, 246 F.3d 515, 518 (6th Cir. 2001).

The district court's certificate of appealability reads in key part as follows:

> [R]easonable jurists could debate the Court's conclusion that Petitioner is not entitled to relief based on his claims that (1) the Offenses-to-Second-Arrest Delay violated his due process rights, and (2) the First-Arrest-to-Trial-Delay violated his Sixth Amendment speedy trial rights. Therefore, the Court will grant a certificate of appealability *solely* as to these two issues.

This court subsequently denied Brown's request to expand the certificate of appealability on January 22, 2016.

Brown insists that the district court's grant of a certificate of appealability on the speedy-trial claim covered the ineffectiveness claims because: (1) he listed his speedy-trial claim and his related ineffective assistance claims in "Ground Three" of his pro-se petition, such that the latter was "subsumed" in the speedy-trial claim; and (2) the district court "accordingly considered all three claims together in the same section of its opinion."

The district court addressed Brown's Sixth Amendment speedy-trial claim in Section C. 1. 2. of its Analysis, entitled "The Sixth Amendment Speedy Trial Claim Based Upon the First-Arrest-to-Trial Delay." In the ultimate paragraph of that section, which concluded that Brown's "failure to demonstrate prejudice compels the conclusion that his Sixth Amendment right to a speedy trial was not violated," the court added the following footnote:

> To the extent Petitioner raises a freestanding ineffective assistance of counsel claim in his Petition on the ground that his trial and/or appellate counsel failed to invoke his Sixth Amendment speedy trial rights, that claim fails because Petitioner has not shown that the result of the proceedings would have been different if his counsel had raised the issue.

Contrary to Brown's assertion, we read the district court's certificate of appealability, along with the companion opinion, as clearly *excluding* any potential ineffectiveness claims as they pertain to the Sixth Amendment speedy-trial claim.[6] Indeed, the district court did not perceive that it had free-standing ineffectiveness claims related to the speedy-trial claim before it. Instead, it described the issues presented by Brown on habeas as merely:

> his trial counsel was ineffective for failing to move for separate trials for the different charges, (2) his statement to police was involuntary, (3) his right to a speedy trial was violated, (4) the trial court admitted a lab report into evidence at trial without the authoring witness's testimony, and (5) excluding the improperly admitted report, there was sufficient evidence at trial to support Petitioner's convictions.

And it acknowledged Petitioner's possible attempt to raise freestanding ineffective-assistance claims in the context of his speedy-trial claim in its analysis, as reflected by footnote 6. Thus, when it indicated in the certificate of appealability that it was limiting the certificate "solely" to the due-process and speedy-trial claims, it was not overlooking Brown's ineffective assistance-of-counsel claims but clearly rejecting them as not meriting further review by this court. Thus, they are not properly before us for review.

---

[6]Because the district court clearly indicated that it did not wish to certify any freestanding ineffective-assistance-of-counsel claims, any pleading leniency Brown might receive as a pro se petitioner (which he was when he filed his habeas petition) is unnecessary.

## V.

For the foregoing reasons, the judgment of the district court is AFFIRMED.