NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0134n.06

No. 21-4177

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Mar 15, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| DAREK LATHAN, | ) |
| Defendant-Appellant. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: MOORE, THAPAR, and NALBANDIAN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Darek Lathan was convicted by a jury of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). On appeal, Lathan argues that his rights under the Speedy Trial Act and the Sixth Amendment were violated when the district court waited to determine his competency until after the court received a second mental-health evaluation. Lathan also asserts that the district court violated Federal Rule of Criminal Procedure 12(d) by denying many of his pro se motions without holding a hearing or stating its findings. We reject these arguments and affirm Lathan's conviction. Separately, while this appeal was pending, Lathan filed pro se motions for bail pending appeal and to amend this appeal to join it with another that he filed in this court. We deny both motions.

## I. BACKGROUND

On February 7, 2018, Lathan was charged with one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, both in violation of 18

U.S.C. § 922(g)(1). R. 1 (Indictment at 1–2) (Page ID #1–2). At his arraignment later that month, Lathan pleaded not guilty to both counts and was appointed counsel. The magistrate judge ordered that Lathan be detained pending trial. R. 10 (Order of Detention at 1–2) (Page ID #20–21).

Early in the proceedings, Lathan opted to represent himself with only the assistance of standby counsel, David Klucas, and began filing numerous pro se motions. *See* R. 111 (09/14/2018 Hr'g Tr. at 4, 24) (Page ID #572, 592). One of Lathan's pro se motions asserted that he was "exempt from prosecution" and that the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") was keeping him "falsely imprisoned" because he refused to sign a waiver agreeing not to sue the ATF in exchange for "exculpatory and exonerating evidence[.]" R. 26 (08/17/2018 Def. Mot. at 1–2) (Page ID #148–49). Another motion sought a court-ordered investigation into the "continuing pattern of corrupt activity" at the jail where Lathan was detained pending trial. R. 29 (09/12/2018 Def. Mot. at 1) (Page ID #154). In this latter motion, Lathan charged the jail with, among other things, buying products in bulk and "then selling the goods individually" despite "the package clearly say[ing] 'NOT LABELED FOR INDIVIDUAL SALE.'" *Id.* at 2 (Page ID #155).

The district court raised the issue of Lathan's competency at a hearing on September 19, 2018. At the hearing, the court, prosecutor, and Klucas agreed that Lathan's pro se motions, demeanor that morning, and behavior at prior proceedings provided grounds for the court to order a competency evaluation.[1] R. 123 (09/19/2018 Hr'g Tr. at 2–4) (Page ID #659–61). The court

---

[1]The district court also referenced a statement that Lathan made at a prior hearing before the magistrate judge about not receiving medication at the jail where he was being held. R. 123 (09/19/2018 Hr'g Tr. at 6–7) (Page ID #663–64). Lathan clarified that the medication he had been referring to at that prior proceeding was "Motrin for [his] arthritis" and that he did not take any "psychological" medications. *Id.* at 7 (Page ID #664). The district court later explained that it was not referring Lathan to the CDTC because of the mix-up about his medication, but rather because the court's "review of the docket and the pending motions and the relief that [Lathan] [was] requesting" led it to believe that Lathan was "not fit and able mentally to stand trial." *Id.* at 14 (Page ID #671).

informed Lathan that it was referring him to the Court Diagnostic and Treatment Center ("CDTC") for a "competency examination."[2] *Id.* at 10 (Page ID #667). The court held the case in abeyance pending the CDTC's evaluation. R. 34 (09/21/2018 Dist. Ct. Order at 1–2) (Page ID #170–71).

The CDTC examination was significantly delayed. In February 2019, five months after ordering the evaluation, the district court held a hearing addressing the delay. Lathan explained that he had not been examined by the CDTC because he had filed a judicial misconduct claim against the then-presiding district judge, United States District Judge James G. Carr for the Northern District of Ohio, and claimed to have been advised by a Sixth Circuit employee not to submit to the CDTC examination until after the misconduct claim was resolved. R. 112 (02/19/2019 Hr'g Tr. at 4–8) (Page ID #603–07). The district court explained to Lathan that he had been misadvised by the Sixth Circuit employee, and informed him that he had one final opportunity to be evaluated by the CDTC. *Id.* at 11 (Page ID #610). The district court warned Lathan that if he did not comply, the Bureau of Prisons ("BOP") would conduct the examination. *Id.*

Following the February 2019 hearing, Lathan filed several more pro se motions. The motions sought, among other things, to suppress evidence, to release Lathan from jail under the Bail Reform Act, to compel the production of evidence, and to appoint counsel. *See* R. 41 (03/20/2019 Def. Mot. at 1) (Page ID #187); R. 42 (03/22/2019 Def. Mot. at 1) (Page ID #228); R. 44 (04/10/2019 Def. Mot. at 1) (Page ID #241); R. 49 (04/29/2019 Def. Mot. at 1) (Page ID

---

[2]Neither party discusses what the CDTC is or what services it offers. Per its website, the CDTC "is a private, non-profit organization" that "provides expert evaluations, testimony, and consultations specializing in the mentally ill offender and regularly offer[s] training to the professional community." *About Us*, CDTC, https://courtdiagnostic.com/about-us/ (last visited Feb. 24, 2023).

3

#298). The district court granted the last motion and appointed Klucas, who had been serving as standby counsel, to represent Lathan. (05/09/2019 Dist. Ct. Minute Order).

The district court held a hearing on June 10, 2019 addressing Lathan's remaining motions and the status of the CDTC evaluation. At the hearing, Klucas explained that the CDTC had tried to examine Lathan in May, but that the evaluation had been postponed after Lathan said that he wanted Klucas to be present. R. 113 (06/10/2019 Hr'g Tr. at 2–3) (Page ID #625–26). The district court concluded that "under the circumstances, the most sensible thing to do" was to refer Lathan to the BOP "for the purpose of competency and mental status examination[.]" *Id.* at 3 (Page ID #626). The court also informed Lathan that "because [he] ha[d] an attorney," he could "no longer file anything with the [c]ourt" and that Lathan had to send to Klucas "[e]verything that [he] want[ed] filed[.]" *Id.* at 4 (Page ID #627). The following day, the court formally denied all of Lathan's pending pro se motions and indicated that the next conference would be scheduled "upon receipt of the [BOP] report." R. 54 (06/11/2019 Dist. Ct. Order at 2) (Page ID #319).

Despite the district court's decision to have Lathan evaluated by the BOP rather than the CDTC, the court received a competency report from the CDTC on June 24, 2019. *See* R. 58 (CDTC Report at 1) (Page ID #325). The report was authored by Thomas G. Sherman, a medical doctor and the medical director of the CDTC, who reported that he had examined Lathan on June 11, 2019—only one day after the district court had ordered the BOP evaluation. *Id.* at 1, 8 (Page ID #325, 332). Based on his review of Lathan's records and his conversation with Lathan, Dr. Sherman concluded that Lathan was "currently capable of understanding the nature and objective of the proceedings against him and [was] currently capable of assisting in his defense." *Id.* at 7 (Page ID #331).

Neither the district court nor the parties acknowledged the CDTC report. Instead, the next substantive activity reflected on the district court's docket occurred one month later, when Klucas moved to withdraw from the case. *See* R. 60 (07/27/2019 Def. Mot. at 1) (Page ID #334). "As grounds for [the] motion," Klucas reported that Lathan had "filed a civil suit naming" Klucas "as a defendant in the Lucas County Court of Common Pleas" that claimed that Klucas had engaged in "legal malpractice." *Id.* Like the CDTC report, Klucas's motion initially went unaddressed.

The district court received the BOP's competency report on October 31, 2019. R. 62 (BOP Report at 1) (Page ID #337). The report was authored by two forensic psychologists, Samantha Shelton and Lisa Matthews. *Id.* at 15 (Page ID #351). At the outset, the report addressed the four months that had elapsed since the district court ordered the evaluation. *Id.* at 1 (Page ID #337). According to the report, Lathan arrived at the BOP's detention center in Los Angeles on July 11, 2019, one month after the district court's order. *Id.* The delay between the court's order and Lathan's arrival in California prompted the BOP to submit a request to the court "for the evaluation period to begin on the date of arrival."[3] *Id.* The district court apparently did not respond to this initial request, leading the BOP to submit a second request several months later, on October 9, 2019. *Id.* Although neither of the BOP's requests nor the district court's response is reflected on the district court's docket, the district court appears to have promptly responded to the second request because the BOP performed the evaluation less than one week after sending it. *Id.* The BOP reported that, based on its evaluation, "there is evidence to indicate Mr. Lathan met criteria

---

[3]The BOP did not explain why it believed it was necessary for the evaluation period to begin on the date of Lathan's arrival in Los Angeles and neither party addresses the issue. We presume that the BOP's request was prompted by the time limits federal law imposes on psychiatric and psychological examinations. *See* 18 U.S.C. § 4247(b).

for a diagnosis for a personality disorder." *Id.* at 14 (Page ID #350). But like the CDTC, the BOP ultimately concluded that "Lathan appears competent to understand the nature and consequences of the court proceedings against him, and to properly assist counsel in his defense." *Id.* at 15 (Page ID #351).

The parties reconvened at a hearing held in November 2019. The primary topics addressed at the hearing were Lathan's lawsuit against Klucas and Klucas's pending motion to withdraw. *See* R. 124 (11/20/2019 Hr'g Tr. at 2) (Page ID #673). The court granted Klucas's motion to withdraw and told Lathan that it would appoint one final attorney to represent him. *Id.* The court then expressed significant frustration with Lathan's decision to sue Klucas, accusing Lathan of gaming the system and warning him: "Play games with The Court, and if you are found guilty at the end of the day, you will pay a penalty for doing so." *Id.* at 3 (Page ID #674). After an extended discussion concerning Lathan's lawsuit, the prosecutor raised the unresolved issue of Lathan's competency. *Id.* at 27 (Page ID #698). The court stated that it would wait until Lathan's new counsel could be brought into the case before making a competency determination. *Id.*

The parties next met at a hearing held on December 12, 2019. Referring to the prior month's hearing, the district court told Lathan that it was "not angry" with him, but that it would "withdraw from [the] case" so that Lathan did not "hav[e] any apprehensions that . . . [he] would not be treated fairly." R. 125 (12/12/2019 Hr'g Tr. at 2–3) (Page ID #702–03). Notwithstanding its recusal, the court proceeded to appoint Lathan a new attorney and make its competency determination. *Id.* at 5, 10–11 (Page ID #705, 710–11). The court explained that it had read "the report[]" and thought it was "quite clear from the record" that Lathan was competent. *Id.* at 10–11 (Page ID #710–11). Neither the prosecutor nor Lathan objected. *Id.*

6

Following the December conference, the case was reassigned to United States District Judge George Caram Steeh III for the Eastern District of Michigan and proceeded toward trial.[4] Lathan filed dozens more pro se motions over the ensuing eighteen months, including motions to dismiss the indictment on speedy trial grounds. R. 81 (05/26/2020 Def. Mot. at 1–6) (Page ID #426–31); R. 85 (06/03/2020 Def. Mot. at 1–11) (Page ID #445–55); R. 103 (05/07/2020 Def. Mot. at 1–2) (Page ID #542–43). The district court denied these motions. *See, e.g.*, R. 160 (09/30/2020 Dist. Ct. Order at 2–4) (Page ID #974–76). Lathan's trial began on June 7, 2021, and concluded on the fourth day, when the jury found Lathan guilty of both offenses. R. 287 (Am. Judgment at 1) (Page ID #1539). On December 8, 2021, Lathan received a sentence of 235 months of imprisonment. *Id.* at 2 (Page ID #1540). Lathan now appeals. R. 286 (Notice of Appeal at 1) (Page ID #1537).

Since his appeal was docketed, Lathan has filed several pro se motions in this court. Before briefing commenced, Lathan moved pro se for release pending appeal. We denied that motion. *See United States v. Lathan*, No. 21-4177 (6th Cir. Apr. 5, 2022) (order). Lathan was later appointed appellate counsel, and his counsel filed an opening brief but has made no appearance in the case since then. Following close of briefing, Lathan filed two additional pro se motions. The first motion again asks us to release Lathan pending his appeal. D. 61 (10/11/2022 Def. Mot. at 1–12). The government moves to strike this motion because Lathan is represented by counsel. D. 64 (10/14/2022 Gov't Mot. at 1–3). And Lathan's second motion, titled "affidavit to amend

---

[4]The case was initially reassigned to United States District Judge Jack Zouhary for the Northern District of Ohio, but Judge Zouhary immediately recused himself. *See* R. 66 (12/12/2019 Dist. Ct. Order at 1) (Page ID #358). The case was then assigned to Judge Steeh. *See* R. 67 (01/09/2020 6th Cir. Order at 1) (Page ID #359).

appeal," asks us to "amend" this appeal with another in which Lathan is representing himself in a challenge to the district court's denial of his motion for a new trial. D. 68 (02/08/2023 Def. Mot. at 1–2); *see also United States v. Lathan*, No. 22-4064 (6th Cir.). We construe this latter motion to seek the joinder of Lathan's two appeals. The government has not responded to this motion.

## II. ANALYSIS

### A. Speedy Trial Rights

Lathan argues that his rights under the Speedy Trial Act and the Sixth Amendment were violated when the district court failed to move his case toward trial between when the CDTC issued the first competency report finding that he was competent to stand trial and when the BOP issued the second report reaching the same conclusion. We begin with Lathan's challenge under the Speedy Trial Act and then turn to his claim under the Sixth Amendment.

#### 1. Speedy Trial Act

The Speedy Trial Act requires a criminal defendant's trial to begin within 70 days from when he is charged or makes an initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). If more than 70 days elapse, "the information or indictment shall be dismissed on motion of the defendant." *Id.* § 3162(a)(2). "The Act, however, excludes from the 70-day period delays due to certain enumerated events." *Bloate v. United States*, 559 U.S. 196, 199 (2010) (citing 18 U.S.C. § 3161(h)). "[O]nce a defendant makes a *prima facie* showing that more than 70 days have passed, the government bears the burden of proving sufficient excludable time by a preponderance of the evidence." *United States v. Sobh*, 571 F.3d 600, 602 (6th Cir. 2009). "In reviewing the denial of a motion to dismiss for violation of the Speedy Trial Act, we review the district court's interpretation of the Speedy Trial Act *de novo* and its factual findings for clear error." *Id.*

8

There is no dispute that Lathan has made a prima facie showing that more than 70 days elapsed between his indictment, on February 7, 2018, and the start of his trial, on June 7, 2021. The parties' disagreement is limited to whether the government has met its burden of proving that the 129 days that passed between when the district court received the CDTC's competency report, on June 24, 2019, and when the court received the BOP's competency report, on October 31, 2019, are excluded from the Speedy Trial Act's computation of time.[5] The only possible basis for excluding those 129 days identified by the government is 18 U.S.C. § 3161(h)(1)(A), which excludes any "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." If § 3161(h)(1)(A) does not exclude the 129 days, then Lathan's indictment must be dismissed. *See Sobh*, 571 F.3d at 602.

The government makes a plausible case that § 3161(h)(1)(A) excludes the 129-day period. By its terms, § 3161(h)(1)(A) excludes from the Speedy Trial Act's computation of time "delay" that "result[s] from" competency "examinations." 18 U.S.C. § 3161(h)(1)(A). The provision also excludes delay resulting from other "proceeding[s] . . . to determine the mental competency . . . of the defendant[.]" *Id.*; *see also Bloate*, 559 U.S. at 206–07 (observing that § 3161(h)(1)(A)'s use of the phrase "including any examinations" indicates "that other competency-related proceedings besides 'examinations' might fall within" the provision's "automatic exclusion"). Here, the 129-day delay corresponded to the BOP's evaluation of Lathan, the preparation of its report, and the

---

[5]Lathan initially suggests that the delay between June 11, 2019, when the CDTC report was prepared, and June 24, 2019, when the report was filed with the district court, should also be counted toward the 70-day period. But he then suggests that this period "could reasonably" be excluded. *See* Appellant Br. at 26. And the remainder of his brief is focused on delay that occurred after June 24, 2019. *Id.* at 27. Given Lathan's apparent abandonment of his argument concerning the delay between June 11 and June 24, we focus on the 129-day period that lies at the core of his argument. Nonetheless, even if Lathan had pressed his argument with respect to the delay between June 11 and June 24, that argument would fail for the same reasons identified in the remainder of this opinion.

9

filing of the report with the district court. These events were either "examinations" or other competency "proceedings." And the Supreme Court has held that § 3161(h)(1)'s exclusion of delays "resulting from" various events—such as examinations or other competency proceedings under § 3161(h)(1)(A)—applies "automatically" upon the specified event and without regard to whether the event "actually caused or was expected to cause delay of a trial." *United States v. Tinklenberg*, 563 U.S. 647, 653, 660 (2011). Ordinarily, then, § 3161(h)(1)(A) would automatically exclude the 129 days from the 70-day period prescribed by the Speedy Trial Act.

Lathan's primary challenge to the exclusion of the 129 days rests on his belief that his competency was "determined" when the CDTC filed its report with the district court on June 24, 2019. *See* Appellant Br. at 27. Because that report concluded that Lathan was competent to stand trial, Lathan contends that none of the delay that occurred after June 24, 2019 "result[ed] from any proceeding . . . to determine [his] mental competency[.]" 18 U.S.C. § 3161(h)(1)(A).

We take a different view of the significance of the CDTC report. Contrary to Lathan's argument, Lathan was not found competent to stand trial on June 24, 2019. The CDTC report submitted on that date provided *evidence* that Lathan was competent, but it did not make a *determination* to that effect. *Cf. United States v. Pina*, 724 F. App'x 413, 419 n.3 (6th Cir. 2018) (noting a similar conflation of "a mental-health evaluation and a competency hearing"). Indeed, that determination was not the CDTC's to make. Federal law instead tasks the district court with deciding whether a defendant is able "to understand the nature and consequences of the proceedings against him" and "to assist properly in his defense[.]" *See* 18 U.S.C. § 4241(d). And the district court did not make that decision until after it received the BOP report, at the hearing held on December 12, 2019. *See* R. 125 (12/12/2019 Hr'g Tr. at 10–11) (Page ID #710–11). Thus,

the CDTC report did not determine Lathan's competency and thereby restart the speedy trial clock. *See Bloate*, 559 U.S. at 206–07; *Pina*, 724 F. App'x at 420; *United States v. Patterson*, 872 F.3d 426, 434 (7th Cir. 2017); *United States v. Graves*, 722 F.3d 544, 548–49 (3d Cir. 2013).

Lathan makes one other argument. He asserts that § 3161(h)(1)(A) does not exclude the 129 days because "[e]ven if there was reasonable cause" for the district court to order the BOP evaluation on June 11, 2019, "such justification could no longer be relied on" after the CDTC report was filed on June 24, 2019. Appellant Br. at 27. In other words, Lathan argues that the district court lacked authority to proceed with the BOP examination after it received the CDTC report.

We addressed a similar but distinct challenge in *United States v. Pina*, 724 F. App'x 413. The defendant there, Pina, argued that the delay caused by a second competency examination was not excluded by § 3161(h)(1)(A) because the district court abused its discretion in ordering the second evaluation. *Id.* at 418. We observed that Pina's argument proceeded in two steps:

> First, he argues that the district court abused its discretion when it ordered the second mental-health evaluation. Second, Pina argues that we should import the reasonable-cause standard in 18 U.S.C. § 4241(a), which governs when the district court should order a competency hearing, into 18 U.S.C. § 3161(h)(1)(A) so that if the district court did not have reasonable cause to order a hearing, then any delay caused by a mental-health evaluation conducted in order to facilitate this hearing should not be excludable from the time computation of the Speedy Trial Act.

*Pina*, 724 F. App'x at 418–19 (citation omitted). We ultimately declined to address the second step of Pina's argument, because we concluded that it was appropriate for the district court to order the second examination based on deficiencies in the first. *Id.* at 419–20.

Lathan's argument is far less developed than the one we addressed in *Pina*. In contrast with Pina, Lathan does not discuss in any detail the substantive law governing competency

hearings or examinations. Nor does Lathan ask us to import that law into the Speedy Trial Act, which we have either declined to do or found it unnecessary to do in other contexts. *See United States v. Murphy,* 241 F.3d 447, 456 (6th Cir. 2001); *Pina*, 724 F. App'x at 420; *United States v. Jackson*, 179 F. App'x 921, 934 (6th Cir. 2006). The closest Lathan comes to discussing these substantive legal standards is his passing assertion that there was no "reasonable cause" for the BOP evaluation following the completion of the CDTC report. *See* Appellant Br. at 27. But the reasonable-cause standard is drawn from a provision governing competency *hearings*, not competency *examinations*. *See* 18 U.S.C. § 4241(a); *see also Pina*, 724 F. App'x at 419 n.3. Moreover, Lathan does not seriously challenge the district court's decision to order the CDTC or BOP evaluations, whether under the reasonable-cause or some other standard. And he fails to develop any argument that the substantive law governing competency examinations, or the Speedy Trial Act, required the district court to cancel the BOP examination that it had properly ordered and then decide his competency based solely on the CDTC evaluation and report.

Although we find no merit to Lathan's arguments under the Speedy Trial Act, we agree that the district court fell short in its handling of Lathan's case between June and October 2019. First, the district court should have explained its reason for proceeding with the BOP examination after it received the CDTC report.[6] That explanation would have allowed Lathan and the government to decide whether to object to the BOP examination, and it would have facilitated our review of the court's decision and Lathan's challenges to it. Second, the district court should have

---

[6]The government suggests that "Lathan's behavior" during this time "and his continued filing of *pro se* motions that did not relate to issues in his case" gave the district court reason to "conclude[] that a more thorough evaluation was necessary." Appellee Br. at 23. But the government's musings are its own; the district court never identified those facts as the reasons for its decision to wait for the BOP's evaluation.

either promptly responded to the BOP's initial request that Lathan's evaluation period begin upon his arrival in California or inquired why the examination had not been performed within a reasonable time. Instead, Lathan spent more than three months—from July 11 to October 15, 2019—in a California detention center while the BOP awaited a response from the district court and during which time no progress was made in Lathan's case. Neither the district court nor the government has sought to explain or provide a justification for this delay.

The district court could have developed a more complete record and could likely have reduced the delay caused by Lathan's competency proceedings, but Lathan has not identified a legal theory under which this delay would not automatically be excluded. Lathan does not argue that § 3161(h)(1)(A) excludes only "reasonable" delays, or that some other provision of the Speedy Trial Act is applicable to his case. *Cf. Graves*, 722 F.3d at 548 n.6 (leaving open the possibility that § 3161(h)(1)(H), which addresses delays during which a matter is under advisement by the court, "limits the amount of time a court can have the issue of competency under its advisement"). In fact, beyond merely asserting that the delay caused by the BOP evaluation is not excluded by § 3161(h)(1)(A), Lathan does not identify any cases supporting his position, does not discuss or make an argument under any other aspect of the Speedy Trial Act or other provision of federal law, and did not file a reply brief. Given Lathan's failure to develop an argument that would prevent this delay from being excluded by § 3161(h)(1)(A), we hold that the 129 days at issue were properly excluded under the Speedy Trial Act and decline to dismiss Lathan's indictment.

### 2. Sixth Amendment

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI. "The purpose of the speedy-

trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished." *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017). "The remedy for a Sixth Amendment speedy-trial violation is dismissal with prejudice." *United States v. Sutton*, 862 F.3d 547, 554 (6th Cir. 2017). "In determining whether a defendant's Sixth Amendment right to a speedy trial has been violated, we review questions of law de novo and questions of fact under the clearly-erroneous standard." *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007).

We balance four factors identified by the Supreme Court in *Barker v. Wingo* to determine whether a criminal defendant's speedy-trial rights were violated. 407 U.S. 514, 530–33 (1972). These factors include: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant." *Romanowski*, 845 F.3d at 712 (citing *Barker*, 407 U.S. at 530). "None of the factors is 'a necessary or a sufficient condition to the finding of a deprivation of the right of speedy trial,' but the factors are related and 'must be considered with such other circumstances as may be relevant' in 'a difficult and sensitive balancing process.'" *United States v. Young*, 657 F.3d 408, 414 (6th Cir. 2011) (quoting *Barker*, 407 U.S. at 533).

We address the four *Barker* factors in turn.

### a. Length of Delay

The first *Barker* factor—the length of delay—"is a threshold issue." *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007). "[I]f there is no delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors." *Id.* We have held that "a delay is presumptively prejudicial when it approaches one year." *Id.*; *see also Romanowski*, 845 F.3d at

714.  Here, there is no dispute that it took more than three years for Lathan's case to progress from indictment to trial.  That delay is presumptively prejudicial, and requires us to examine the remaining *Barker* factors.  *See United States v. Ferreira*, 665 F.3d 701, 705 (6th Cir. 2011).

### b.  Reason for Delay

"In assessing the second factor, the reason for the delay, the court considers who is most at fault—the government or the defendant."  *Romanowski*, 845 F.3d at 714.  "'A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government,' while a 'more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'"  *United States v. Thornton*, 822 F. App'x 397, 403 (6th Cir. 2020) (quoting *Barker*, 407 U.S. at 531).

Here, Lathan asks us to consider only the causes of the 405-day delay between when the district court ordered the CDTC evaluation, on September 21, 2018, and when the court received the BOP report, on October 31, 2019.  *See* Appellant Br. at 35.  As discussed, there were several reasons for this delay.  Over half of the 405 days—approximately 276—were spent by the district court and parties attempting to have Lathan evaluated by the CDTC.  That evaluation, which was first ordered on September 21, 2018, but not received by the district court until June 24, 2019, was repeatedly postponed for reasons outside of the government's control.  The first postponement resulted from Lathan's belief that he could not be evaluated until after his judicial misconduct claim was resolved, and the second postponement occurred after Lathan told the CDTC that he wanted his attorney to be present for the evaluation.  Thus, the reason for this portion of the longer

15

405-day delay weighs in favor of the government because "[t]he government had a valid reason to ensure that the defendant was competent to stand trial." *Pina*, 724 F. App'x at 421.

We agree, however, that much of the remaining delay—approximately 129 days—is chargeable to the government. Those 129 days comprise the period between when the district court received the CDTC report, on June 24, 2019, and when it received the BOP report, on October 31, 2019. Of this broader period, we find problematic the approximately 96-day delay between when Lathan arrived in California, on July 11, 2019, and when the BOP evaluated Lathan, on October 15, 2019. The district court offered no explanation for why it took so long to respond to the BOP's request for a date change, and the government does not defend the court's delay. Lathan, on the other hand, speculates that "[a] possible explanation for this conduct by the [district court] is that it may have been motivated by personal animosity" directed toward Lathan. Appellant Br. at 36–37. Lathan claims that the district judge's animosity toward him "became evident at the" November 2019 hearing at which the court reproached Lathan for suing Klucas and causing Klucas to withdraw from his representation of Lathan. *See* R. 124 (11/20/2019 Hr'g Tr. at 2–7) (Page ID #673–78). We are unpersuaded that this exchange demonstrates that Lathan's case was delayed by impermissible personal hostility. These events occurred *after* the BOP filed its report, and arose from issues unrelated to the competency proceedings. The record suggests instead that the district court was simply negligent in failing to respond to the BOP's first request. Although this negligence weighs less heavily against the government, "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Thornton*, 822 F. App'x at 403 (quoting *Barker*, 407 U.S. at 531).

### c. Assertion of Right

"Although a defendant does not waive the right to a speedy trial by failing to assert it, the degree to which the defendant has asserted the right is one of the factors to be considered in the balance." *United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999) (citing *Barker*, 407 U.S. at 531–32). There is no dispute that Lathan repeatedly asserted his right to a speedy trial. *See* R. 81 (05/26/2020 Def. Mot. at 1–6) (Page ID #426–31); R. 85 (06/03/2020 Def. Mot. at 1–11) (Page ID #445–55); R. 103 (05/07/2020 Def. Mot. at 1–2) (Page ID #542–43).

### d. Actual Prejudice

The fourth and final *Barker* factor requires us to consider the prejudice that Lathan experienced due to the delay in his case. "The prejudice prong exists to protect three interests: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Young*, 657 F.3d at 418 (quoting *Barker*, 407 U.S. at 532). The last interest is the most important. *Id.*

Lathan focuses his attention on the first two forms of prejudice identified in *Barker*. He points to the fact that he was incarcerated throughout the 405-day period during which his competency was being determined and asserts that he experienced "anxiety and concern" as a result. Appellant Br. at 37. He does not argue that his defense was impaired by the delay.

As noted earlier, over half of the 405-day delay at issue resulted from unchallenged efforts to determine Lathan's competency that weigh in the government's favor, and the portion that resulted from government negligence amounts to approximately 129 days. We do not doubt that those 129 days caused Lathan anxiety and concern. Lathan does not, however, argue that his defense was impaired by the delay, and we have not held that a four-month delay attributable to

the government's negligence is itself sufficient to demonstrate actual prejudice. *See United States v. Jackson*, 473 F.3d 660, 667 (6th Cir. 2007) (observing that *Doggett v. United States*, 505 U.S. 647, 657–58 (1992), "held that an eight-and-a-half-year delay between indictment and arrest . . . entitles a defendant to relief even absent proof of actual prejudice[,]" but that this court has held that shorter delays, including delays of thirteen-and-a-half months and three years, "result in only minimal prejudice"); *Romanowski*, 845 F.3d at 717; *Ferreira*, 665 F.3d at 706–08.

*    *    *

Lathan's case was slow moving, taking more than three years to reach trial on two relatively straightforward charges. Much of the delay, however, was caused by Lathan's toggling between representing himself and being represented by appointed counsel, his lawsuits against his attorneys, and his more than 100 pro se motions. The remaining delay stemmed from efforts to determine Lathan's competency. Some portion of this delay "weighs in favor of the government because it was seeking to protect [Lathan's] constitutional rights." *Pina*, 724 F. App'x at 421. The balance of the delay, consisting of about 129 days, weighs against the government, because it could have taken steps to ensure that Lathan was evaluated promptly by the BOP. But there is no evidence that the 129-day delay was caused by anything other than negligence. Lathan does not argue that any of the delay prejudiced his defense or argue with any specificity how the delay harmed him or his prospects at trial. Accordingly, after considering the *Barker* factors, we hold that the government did not violate Lathan's right to a speedy trial under the Sixth Amendment.

## B. Federal Rule of Criminal Procedure 12

In addition to his speedy trial claims, Lathan raises an argument under Rule 12(d), which requires a district court to "decide every pretrial motion before trial unless it finds good cause to

defer a ruling." Fed. R. Crim. P. 12(d). "When factual issues are involved in deciding a motion, the court must state its essential findings on the record." *Id.* Rule 12(d) "is mandatory and a district court abuses its discretion when it fails to comply." *United States v. Thomas*, 662 F. App'x 391, 400 (6th Cir. 2016) (citing *United States v. Moore*, 936 F.2d 287, 288 (6th Cir. 1991)).

Lathan argues that the district court violated Rule 12(d) by denying several of his pro se motions in its June 11, 2019 order.[7] R. 54 (06/11/2019 Order at 1) (Page ID #318). Although the order does not provide a rationale for the court's decision, the court explained at the conference held one day earlier that it was denying the pro se motions because Lathan was represented by counsel. *See* R. 113 (06/10/2019 Hr'g Tr. at 4) (Page ID #627).

The district court complied with Rule 12(d). To begin, the court did not discuss or resolve any factual issues. The court instead resolved Lathan's motions solely on the basis that he could not engage in hybrid representation. *See United States v. Green*, 388 F.3d 918, 922 (6th Cir. 2004) (a criminal defendant does not have a protected right to hybrid representation). The district court also explained that Lathan was free to bring the issues discussed in his prior motions to the attention of his counsel, who would be responsible for "mak[ing] an independent judgment" about whether to file additional motions with the court. R. 113 (06/10/2019 Hr'g Tr. at 4) (Page ID #627). Further, the court stated the basis for its decision on the record. *See United States v. Kuehne*, 547 F.3d 667, 695 (6th Cir. 2008) (observing that Rule 12(d) does not "specify the manner in which the findings on the record must be made"). Lathan, who was present at the conference

---

[7]The government defends several of the district court's other orders against Rule 12(d) attack. *See* Appellee Br. at 41–44. Although Lathan references those orders, he does not argue that they violate Rule 12(d). *See* Appellant Br. at 38–40. Lathan instead asserts only that the district court violated Rule 12(d) "when it denied [his] pro se motions in its June 11, 2019 [o]rder." *Id.* at 40. We therefore address only the district court's June 11, 2019 order.

with counsel, acknowledged the court's decision and did not object to it. *See* R. 113 (06/10/2019 Hr'g Tr. at 4) (Page ID #627). Accordingly, Lathan's Rule 12(d) challenge to his conviction is unavailing.

## C.  Pro Se Motions on Appeal

We conclude by addressing Lathan's pro se motions on appeal. Ordinarily, we do not permit a counseled litigant to engage in hybrid representation on appeal. *See United States v. Williams*, 641 F.3d 758, 770 (6th Cir. 2011). In any event, Lathan's motion for bail pending appeal is now moot. *See United States v. Marion*, 477 F.2d 330, 332 (6th Cir. 1973). And his motion to amend asks us to join two appeals that were filed more than a year apart, that arise out of different district court orders, and that raise different issues without explaining why the two cases should be joined or identifying a legal basis upon which to join them. We therefore deny both motions.

## III.  CONCLUSION

For the foregoing reasons, we affirm Lathan's conviction and deny his pro se motions for bail pending appeal and to amend his appeal.